J. W. WINANS, MURRAY MORRISON AND A. C. MONSON, RESPONDENTS, *v.* CHARLES CHRISTY AND ALLEN J. SHOBE, APPELLANTS.

[1] EJECTMENT ON PRIOR POSSESSION.—Possession, coupled with color of title, must prevail, except where a better title is shown in the defendants; and where a plaintiff in ejectment pleads a fee simple title, he is not compelled to prove the same; but can properly rely upon prior possession, if he choose to do so.

---

[1] Cited in *Anderson* v. *Parker,* 6 Cal. 200. Approved in *Merced M. Co.* v. *Fremont,* 7 Cal. 319; *Nagle* v. *Macy,* 9 Cal. 427; *Turner* v. *Aldridge,* 1 McAll. 232; See *Hutchinson* v. *Perley, ante,* 33; *Hicks* v. *Davis, ante,* 67; *Plume* v. *Seward, post,* 94; *Bequette* v. *Caulfield, post,* 278; *Castro* v. *Gill,* 5 Cal. 40.

[2] IDEM — WHAT CANNOT BE SHOWN IN DEFENSE. — The defendant, when a mere naked trespasser, cannot introduce evidence to show that the title is in a third party, or that the fee of the land in question is in the Government of the United States; nor to impeach the validity of the conveyance to plaintiff collaterally as against third persons.

[3] IDEM — SEPARATE ANSWERS. — The plaintiff in ejectment may sue one or more defendants, and they may answer separately, or demand separate verdicts; unless they do so, however, they will be concluded by the general verdict.

APPEAL from the Sixth Judicial District.     Ejectment.

The complaint states that the plaintiffs have lawful title, as the owners in fee simple of certain real estate therein described and situated in the City of Sacramento, and constituting the entire block or square between Ninth and Tenth streets and H * and J streets in said city; [71] and that the defendants are in possession of said real estate, and unlawfully withhold possession of the same from the plaintiffs.

The defendant Christy, in his answer, refers to that part of the complaint which sets up lawful title in fee simple in the plaintiffs, and denies the same, and says they are not such owners, and have no interest whatever in said land. He admits he is in possession of said land, except the part occupied by defendant Shobe, eighty feet on J street by one hundred and sixty feet on Tenth street; but denies that he unlawfully withholds possession of the same from the plaintiffs.

The evidence in this case shows, *inter alia,* that in the year 1846-7, John A. Sutter, Sen., was in actual corporal possession of a tract of land in Sacramento, of which the premises in controversy constituted a part; tha this possession was an absolute *possessio pedis,* the land being completely inclosed within a substantial fence, occupied and employed for the purpose of securing and keeping horses, cattle, and stock generally. That John A. Sutter, Sen., re-

[2] See *Bord* v. *Lisbros,* 6 Cal. 1; *Piercy* v. *Sabin,* 10 Cal. 22.

[3] Plaintiff may bring joint action: Cited in *Curtis* v. *Sutter,* 15 Cal. 264. Right of defendants to sever, effect of joint verdict, in *Anderson* v. *Parker,* 6 Cal. 201; *Ellis* v. *Jeans,* 7 Cal. 417; *Ellis* v. *Jeans,* 26 Cal. 276. Joint judgment, when erroneous, *Leese* v. *Clark,* 28 Cal. 35. See *McGarvey v. Little,* 15 Cal. 27.

tained such possession undisputed and undisturbed, until he conveyed the said tract of land to John A. Sutter, Jr., some time prior to the fall of 1848, and delivered possession to said Sutter, Jr.; that Sutter, Jr., in 1848, leased the said tract of land to Priest, Lee & Co., who used it for the same purposes as Sutter, Sen. had done; and took actual possession and held the premises as tenants of Sutter, Jr.; that subsequently Sutter, Jr., conveyed the premises back to Sutter, Sen., and gave him, with Priest, Lee & Co's. consent, the possession; whereupon Priest, Lee & Co. attorned to Sutter, Sen., and continued their possession as his tenants; that Sutter held under claim of title and grant from the Mexican Government; that on the 20th day of July, A. D. 1849, Priest Lee & Co. bought the premises, or rather a part of them, by deed, from John A. Sutter, Sen., whose tenants of said premises they had continued up to that time, and duly paid rent for the use thereof; that after said purchase, Priest, Lee & Co. continued to hold actual possession and occupancy of the premises they had bought, of which the block in controversy here forms a part; that the firm [72] of Priest, Lee * & Co. consisted of Priest, Lee, Robb and Cornwall; that on the 27th of October, 1849, Robb conveyed, by deed, his interest in said premises to Priest, Lee & Cornwall; that, on the 27th of October, 1849, Priest conveyed by deed, his interest in said premises to Lee & Cornwall; that, on the 10th of April, 1850, Cornwall and wife conveyed, by deed, Cornwall's interest in said premises to Lee, whereby and by virtue of which conveyances (each of which was accompanied in its execution by an actual delivery of possession), Lee became sole possessor and owner of the premises so bought from Sutter; that when Priest, Lee & Co. first leased the large tract, they strengthened the inclosures, and had their tenants living continuously on the property after that time; that after their purchase from Sutter in 1849, they employed a surveyor to stake out the land purchased, into blocks and lots, with intervening streets; that such streets, lots and blocks were laid out according to the plat, or plan of the City of Sacramento, and continue to be so still; that the block of land in con-

troversy in this suit was so staked out; that it is the block between Ninth and Tenth, and H and J streets; that it was laid out into eight lots of 80 by 160 feet each, as the other blocks of the City of Sacramento are; that stakes were placed at each corner of said block, and at each corner of each lot on said block; that this identical block in controversy was leased by Priest, Lee & Co., somewhere about August, 1849, to a brickmaker, who took possession and held it as their tenant, and the tenant of the continuing owners amongst that firm, until the close of 1849, or until the spring of 1850; that up to the time Cornwall conveyed to Lee (April 10th, 1850), no adverse possession of said block had been claimed or taken; that the block is within the limits of the City of Sacramento, and has been, since February, 1850; that as soon as the original inclosure of the large tract made by Sutter, and kept in constant repair by Priest, Lee & Co. (which was opened to admit the emigration of 1849), had been thrown open, they placed the brickmaker in possession of this square or block in controversy, upon which he erected a brickyard; that he also sunk a pit in the block to take his clay from; that Cornwall saw him there every day *for months after he first leased, [73] and that he resided on the premises and paid rent to his lessors; that a part of his brick remained there until April, 1850; that other acts of ownership were exercised over the property; that Cornwall went repeatedly on the premises, after they had been staked out, and exhibited them to purchasers, or those who wanted to buy; that they frequently removed trespassers from the large inclosure, before the blocks were staked out and surveyed; that the act of possession exercised by Priest, Lee & Co. were continuous acts; that Cornwall went on the property in controversy from day to day, to exhibit it to persons desirous to purchase, and exercised an uninterrupted supervision over it till April, 1850, when it was sold to Lee. The evidence of Barton Lee shows that after the conveyance to him by Cornwall in April, 1850, he took possession of the block as its sole owner; that he went on it frequently, and made repeated efforts to sell it; that soon afterwards he made an arrangement with John

Christy (not Christy who is defendant in this case) and Murray Morrison, about this block; that up to the time he made such arrangement, nobody had ever disputed his claim to the property in question; that there were then no squatters upon it, and it was not claimed adversely by anybody; that the arrangement with John Christy and Morrison was this: Lee gave them a power of attorney to take possession of this block, exercise full control over it on his behalf, and sell the separate lots, if they could, with the agreement that they were to pay to Lee $2,000 a lot, if they sold, and if they did not sell, they were to deliver up the power of attorney to be cancelled; that they took possession of the premises and held such possession (jointly at first, and after Christy's death, by Morrison alone), until October, 1850, and until the property was deeded to the present plaintiffs by Barton Lee; that up to that time Christy and Morrison had sold none of the lots, and accordingly at that time Morrison gave up the power of attorney to be cancelled, which was done, whereupon Lee conveyed to plaintiff; that Christy and Morrison, while acting as the agents of Lee, in taking care and holding possession of the property, inclosed [74] it; that in July, 1850, the witness Harring-*ton took possession of said block in controversy under the following agreement, made with John Christy and Morrison, and as their representative: that he, Harrington, would go on to the block, take possession of it, and hold it for them (they were at that time acting as Lee's agents under the power of attorney in holding the property for him), if they would afterwards give him a good bargain; that Harrington took possession of the whole of said block (but one lot excepted), and after considerable difficulty with squatters, succeeded in dispossessing them all, and fenced in the whole block, except the one lot; that the party in possession of the one lot admitted he had no title, and promised to move away; that Harrington put other improvements on the block; that Harrington held possession of the premises until the last day of August, 1850, at which time Harrington went home to the Atlantic States, after having previously settled with John Christy, who employed him; that prior to leav-

ing, Harrington sold out a lot of hay which he had on said
premises, to William O. Hays; that Harrington, being then
in possession of said premises, as Christy and Morrison's
representative, and on Lee's behalf, made an agreement with
said Hays, that Hays should retain possession of the prem-
ises on Harrington's account until the rainy season ( say De-
cember, 1850), and preserve it against all intruders, and
deliver up the premises to John Christy and Morrison when
the rainy season came, in consideration of which Hays was
to have the use of the premises, as agent for Christy and
Morrison, Lee's agents, until the rainy season; that, under
this agreement, Hays took possession of the premises on
the last day of August, 1850, and Harrington went home to
the Atlantic States; that on the 3d of October, 1850, plain-
tiff took from Barton Lee, Hays then being in possession as
sub-agent and tenant of John Christy and Morrison, Lee's
agents and tenants; that Christy and Morrison's claim under
the power of attorney was at the same time cancelled; that,
on the 20th December, 1850, which was about the beginning
of the rainy season, and when Hays' tenancy was to expire,
and he, by his agreement, to deliver up the premises to
John Christy and Morrison, instead thereof, he exe-
cuted a deed conveying, by quit claim, *his interest        [75]
in the premises to Wyatt McGregor and Charles
Christy, the defendant herein, as tenants in common; that
Charles Christy, the defendant, then and there got posses-
sion of the premises; that Harrington held continuous pos-
session until the 31st August, 1850, for Lee, through his
agents, and after that time Hays held the possession in the
same way until December, when Charles Christy came in;
that Charles Christy never got possession of the premises
until then, and after plaintiffs had taken their title; that
Charles Christy shortly afterwards left the premises and
went into the country; that previously to doing so, he let
them to Henderson and Hentherly, by written lease, who
subsequently abandoned the premises and their possession
of them, and told a man named Nicholas Hahn, who had
been boarding with them, that if he chose to occupy the
premises after they had vacated, he could do so; that after

they left, Hahn took possession, and not having any land-
lord, and recognizing the title of plaintiffs, attorned to them
as their tenant; that after the lapse of some months Charles
Christy returned from the country and entered upon posses-
sion of the premises, whereupon plaintiffs brought this
action.

Barton Lee made two assignments for the benefit of cred-
itors, to Gillespie, Kewen & McKenzie, by which it was sup-
posed that all his property was conveyed to the said
assignees, and plaintiffs took a deed for the premises in con-
troversy, October 3d, 1850, from two of said assignees.
But as it was immediately afterwards discovered that Lee
had never included the premises in question in his assign-
ment, a deed from Barton Lee, individually, was executed
to plaintiffs for the property.

The testimony further shows that plaintiffs paid all the
taxes for the city, county and State, upon said premises,
from the time they took possession until the trial of the
cause, except for the year 1850 State and county taxes; and
that for the State and county taxes of that year, the premises
were sold, and plaintiffs became the purchasers, and after
the lapse of one year, to wit, on the 16th of February, 1852,
plaintiffs recorded their deed taken from Charles H. Swift,
County Treasurer.

[76]      *The defendants moved for a nonsuit, which was
refused, and asked instructions in their favor upon
the points noticed in the opinion of the Court, which were
refused, and after a verdict in favor of the plaintiffs, the
defendants moved the Court for a new trial, which motion
was overruled.

Judgment being entered for the plaintiffs, defendants
appealed.

*Crocker & McKune*, for Appellants.

Under the issue, it was incumbent on the plaintiffs to
prove that the title had passed out of the Government, and
that a fee simple title had vested in them.

When the plaintiff alleges a title in fee simple, he is bound to prove it as alleged, even though proof of a lesser estate might have been sufficient to maintain the action. (1 Cal. 120, 254, 480; 1 Greenl. Ev. § 51, 56; 2 Douglass, 665; 3 Sanders, 206, note 22.) The plaintiff in ejectment must show that the title has passed out of the Government. ( 1 Dallas, 68; Adams' Ej. 275, note; 4 Harr. & McHenry, 72.) There was no proof that Sutter had a shadow of title. If the plaintiff claims title under another, he must show that the person under whom he claims had title. (4 Burrows, 247.) The proof showed that Sutter had a *quasi* possession in 1848, but the plaintiffs introduced no proof of color of title in him, claiming that mere possession alone was evidence of a title in fee simple. Mere possession is no proof of title in fee simple, unless it has continued uninterrupted for at least twenty years. (5 Dana, 394; 5 Munford, 374; 9 Barn. & C. 864; 2 Hayward, 12; 6 Cow. 751; 4 Harr. & McH. 72; Adams' Ej. 77, 78, and note.) And a clear unequivocal possession must be proved. (3 Johns. 383; 4 Dana, 464; Adams' Ej. 77, and note 549.) And it must be continued without any show of abandonment. (7 Cow. 637; 5 Ib. 200; 10 Johns. 338, 356; 16 Ib. 314, 325; 2 Ib. 22; 4 Ib. 202; 3 Ib. 397; Adams' Ej. 77, note.) Mere possession is evidence only of occupation by right, and it depends upon circumstances to show the extent of the right. (7 Wheat. 105, 106.) To constitute actual possession, there must be, first, a real and substantial inclosure; and, second, an actual occupancy. (1 * Cal. 310; 3 Johns.    [77] 387; 2 Ib. 230; 4 Ib. 390; Adams' Ej. 492; 488, 496.) The plaintiff in ejectment must show a grant of the land, and a regular title from the grantee, or twenty years' uninterrupted and exclusive possession of land. (4 Harr. & McH. 72; Adams' Ej. 32, note.) Possession raises but a mere presumption of title, which may be repelled by many circumstances, as where the country is new, and people are accustomed to take possession without a grant, and without title. (9 S. & R. 43, 44.) When the plaintiff introduces title papers to sustain his claim, he must rely upon them, and cannot rely upon proof of prior possession;

the proof was that Sutter was in possession, claiming title under a Mexican grant, but the plaintiffs did not introduce the grant to show the real nature of Sutter's title. If there be a written grant, and this appear on the trial, it must be produced or proved, although there has been an user of more than twenty years, for there may be conditions or qualifications annexed to it. (8 Pick. 329.) A party introducing deeds to prove title cannot fall back upon possession to sustain the action. (1 Paine C. C. 457; 1 Cal. 309, 271.) The grants to Sutter conveyed no legal title, there being no proof that the conditions had been complied with. The plaintiffs refusing to introduce the grants, relying upon possession alone to sustain the action, the defendants introduced the grants to disprove the presumption of title raised by proof of prior possession. A grant does not vest a legal title, unless its conditions and the land regulations have been fully complied with. (13 How. 1, 5, 261, 250; 12 Ib. 209, 221, 433; 15 Pet. 215, 222.) Until these conditions were performed, the fee remained in Mexico and passed to the United States. (13 How. 250; 11 Ib. 96; 15 Pet. 173, 182, 319, 335; 16 Ib. 159; 3 How. 693, 706; 4 Ib. 564.) They have no standing in Court, until the patent issues from the Government transferring the title, which has not been done in this case. (13 How. 250; 12 Ib. 223; 8 Ib. 293, 307; 13 Pet. 447, 450; 4 How. 416; 10 Ib. 348; *Clarkson* v. *Hanks, Leese* v. *Clark,* Cal. Supreme Court.) When the defendants hold separately, the judgment should not be joint. The plaintiff has elected to take a verdict against one, and the verdict *will then be for the others. (21 Wend. 593; 12 Ib. 170.) If plaintiff charges a joint liability, he must prove it joint, and a separate judgment will be erroneous. (1 Cal. 191.) And so, if it appears that the defendants are liable severally, a joint judgment will be error. (1 Cal. 470, 476, 478.)

[78]

*Winans, Monson & Morrison,* for Respondents.

Prior possession alone is sufficient to entitle a plaintiff to recover in ejectment against a mere trespasser, or one who

has entered without claim of title.  *(Jackson* v. *Hayer,* 2 Johns. 22; *Allen* v. *Rivingston,* 2 Saund. 111; 5 Cow. 200; 3 A. K. Marshall, 394 old, 1216 new; 3 A. K. Marshall, 623 old, 1383 new; *Smith* v. *Lorillard,* 10 Johns. 339.)  In ejectment, a prior possession, short of twenty years, under claim of right, will prevail over a subsequent possession, short of twenty years, if the first be not relinquished.  (4 Johns. 210, 203; 1 Breese Ill. 280.)  Defendants, not having asked for a separate judgment, cannot now take advantage in any way of a joint judgment. (5 Wend. 96; 5 Ired. 344; 5 Ib. 426; 5 Johns. 275; 12 Serg. & R. 435; 9 Dana, 452.)

Mr. Ch. J. MURRAY delivered the opinion of the Court. Mr. J. HEYDENFELDT concurred.

We shall not attempt to follow the argument of counsel or pass upon the various points raised on the trial of this cause in the Court below.  To do so would involve an amount of labor, which justice to other business of this Court will not admit of, and only lead us into a hasty and inconsiderate expression of opinion upon important principles not properly arising in the case.

The decision of this cause, we think must turn upon a few plain rules, well settled in the books, and heretofore adopted by this Court.

We decided in the case of *Hutchinson* v. *Perley, ante* 33, that possession was *prima facie* evidence of title, and that proof of prior possession was sufficient evidence on which to maintain ejectment against a mere naked trespasser.

What acts of ownership are necessary to constitute possession, and whether it must be an actual *bona fide* possession or * occupation of the premises claimed,     [79] was not necessary for the decision of that or the present cause; no question being made on the record as to the sufficiency of the improvements.  Whenever this. point presents itself for our consideration, we will lay down some rule which shall govern this vexed question for the future.

The evidence shows a continuous possession under color

of title from Sutter to the present plaintiffs. It also appears that one Harrington, tenant of the plaintiffs' Grantor, delivered the possession to one Hays, upon condition that said possession should be surrendered at a certain time, and that said Hays afterwards sold said premises to the defendant Christy; that there was afterwards an abandonment of the premises by Christy, and that one of the witnesses entered upon, occupied, and attorned to the present plaintiffs.

Under this state of facts, the Court instructed the jury correctly; and properly refused instructions involving questions of law not pertinent to the issue, and calculated to mislead.

This is a much stronger case than the one of *Hutchinson* v. *Perley*, referred to. It is not a mere prior possession, but possession coupled with color of title, which must prevail, except where a better title is shown in the defendants. (See Adams on Ejectment, § 77; *Jackson, ex dem. Livingston* v. *Walker*, 7 Cow. 637; *Woods* v. *Lane*, 2 Searg. & R.; *Jackson, ex dem. Murray et al.* v. *Denn*, 5 Cow. 200; *Jackson, ex dem. Ludlow* v. *Myers*, 3 Johns. 388; *Doe* v. *Herbert et al.*, Breese, 354.)

Neither were the plaintiffs, although they had alleged in their declaration a fee simple title, compelled to prove the same. They could properly rely upon prior possession, if they chose to do so. (See Adams on Ejectment, § 275; *Day* v. *Alverson*, 9 Wend. 223.)

Consequently, the introduction of Sutter's title, and the attempt to show that the fee of the land in question was in the Government of the United States, was inadmissible, as well as any attempt to impeach the deed from the plaintiffs' grantor. The validity of Lee's assignment could not be tried collaterally, and the deed from him to the plaintiffs was good for all the purposes for which it was introduced.

[80]    *It is objected, however, that the judgment is joint against the defendants, and that they claim different portions of the premises. The plaintiff may elect to sue one or more defendants, and they may answer separately, or de-

mand separate verdicts; unless they do so, however, they will be concluded by the general verdict.   (See *Jackson* v. *Scoville*, 5 Wend.; *Smith* v. *Shackleford*, 9 Dana.)

There are errors disclosed by the record which undoubtedly will occur in the hurry of a *Nisi Prius* trial, but on a review of the whole case, we are satisfied that the judgment is correct, and must therefore affirm it.

Judgment affirmed.