[In Bank. — August 29, 1883.]

BUTTE COUNTY, Respondent, *v.* R. W. BOYDSTON, Appellant.

Eminent Domain — Private Roads — Condemnation. — In proceedings to condemn lands for the use of a private road, the court must find separately the value of the land sought to be condemned and the improvements thereon, the damages to the remaining land by reason of the severance, and the benefits which will accrue to the remaining portion of the land by the opening of the road. Without such adjudication the judgment of condemnation is void.

DAMAGES — FENCING — No FENCE LAW. — If it appears that a necessity of fencing land will arise from the construction of the road, the cost of fencing is an element of damage, although the law applicable to the locality may not require the construction of a fence.

APPEAL from a judgment of the Superior Court of Butte County, and from an order refusing a new trial.

The facts are stated in the opinion of the court.

*Reardan & Freer,* for Appellant.

*F. C. Lusk,* for Respondent.

McKEE, J. — The case in hand arises out of a proceeding under title 7, part 3, of the Code of Civil Procedure, to condemn part of a tract of land belonging to the defendant for a private way. Assuming that the appropriation of private property for such a purpose is a taking for public use, for which the power of eminent domain may be exercised (*Sherman* v. *Buick,* 32 Cal. 255), and that the county in which such a road is to be opened represents the use, yet the power must be exercised in the manner provided by the Code of Civil Procedure, under which the proceeding has been commenced. By section 1248 of that Code it is provided that the court in which the proceeding has been brought must hear, with or without a jury, such legal testimony as may be offered by any of the parties to the proceeding; and upon such testimony ascertain and assess, (1) the value of the land sought to be condemned, and of any improvements upon it at the date of the issuance of the summons in the proceeding; (2) the damages which may accrue to the remaining land by reason of its severance from the part sought to be condemned, and the opening of the road in the manner proposed by the plaintiff; and (3) the benefit, if any, which the opening of the road may be to those portions of the defendant's land which may be severed from the part to be appropriated. These constitute the elements of the compensation to which an owner of land is entitled, where his land, or any part of it, is proposed to be taken and appropriated for a public use. And when these things shall have been judicially ascertained and assessed, if the benefit shall be less than the damage, the former must be deducted from the latter, and the

remainder shall be the damages assessed. On the other hand, if the benefit shall exceed or be equal to the damage, the owner shall be entitled only to the value of the land to be taken. But the value of the land, the damage, if any, and the benefit, if any, must be separately assessed, in order that the compensation may be adjudged and paid. Until such an assessment, adjudication, and payment, or tender of compensation, the owner cannot be deprived of his land, and any judgment of condemnation rendered against him would be illegal and void. (§§ 1251, 1252, 1253, Code Civ. Proc.)

In the proceeding under review the law was not complied with. There is not in the record of the case any assessment of damage, nor any finding that no damage was sustained. There is a finding of facts which, it is admitted, "sustains all the *material* allegations of the complaint," but the complaint itself contains no allegations of value, damage, or benefit. Upon this finding the court held, as a conclusion of law, that that portion of defendant's land sought to be condemned was necessary for the road, and that it should be condemned upon payment to the defendant of one hundred and fifty dollars, each party paying his own costs. It is stipulated that this sum of one hundred and fifty dollars was found as damages; but whether the sum was for the value of the land to be appropriated to the road, or for damage for any injury to the remaining land, or for the excess of damage over benefit, nowhere appears in the findings or by an assessment. The defendant was entitled to have his compensation ascertained and assessed according to law; and for that purpose the mode designated by the law must be pursued. Without an assessment, as far as practicable, for each source of damage separately, and without payment or tender of the compensation assessed, no judgment of condemnation could be legally entered. (§ 1248, sub. 5, and § 1253, *supra.*) The judgment is therefore erroneous and must be reversed. But a question arises out of the record, which will again come up at another trial, and we are asked to pass upon it.

It appears that at the hearing of the evidence the defendant offered to prove that the opening of the road would divide his farm in such a way as to make it necessary for him to fence his remaining land. To this the plaintiff objected; the objection

was sustained by the court upon the ground that the cost of fencing was not an element of damage, and that ruling is assigned as error.

It is contended that the ruling was correct, because the cost of fencing is excluded by law, as an element of damage, in all condemnation proceedings, except where a railroad company seeks to condemn land for the purpose of its railroad. In such a proceeding the court is required " to ascertain and assess the cost of good and sufficient fences along the lines of the railroad, and of cattle guards where fences may cross the line of the road " (§ 1248, sub. 4, *supra*); but it is not required to do so in any other case; and therefore it is insisted the defendant was not entitled to prove the necessity or the cost for fencing his land.

But this provision as to railroad companies does not affect the right of the owner to the compensation to which he is entitled. The object of the provision was to secure the performance of a duty imposed by law upon railroad companies on land taken for the purpose of their roads. (§ 485, Civ. Code.) That duty the State enforces by a special assessment in the condemnation proceedings; and the duty must be performed either by the railroad company or the land owner. The assessment may be paid to the land owner by the company, or it may elect to give bond in double the amount of the assessment, for the building of such fences and cattle guards as may be needed upon the land taken for the road within eighteen months after the railroad is built on the land. (§ 1251, Code Civ. Proc.) If the company fails to build, the land owner may sue upon the bond. But if payment of the assessment be made to the land owner and he fails to build and maintain such fences, etc., the law makes him liable to the company for any injuries which may be sustained by reason of his animals running at large upon the railroad, and relieves and exonerates the company from any damage or loss arising out of the killing or maiming of his cattle, trespassing upon the road, unless it be proved that the loss or damage was caused wholly by the fault or negligence of the company. (§ 485, Civ. Code.) The special assessment in a railroad case is therefore made in the line of a duty imposed by law, and not in the way of damages to the land owner for an injury to his land.

But in the present proceeding there can be no assessment against the plaintiff for the enforcement of a legal duty; for the county of Butte is not bound to fence public or private roads. Any assessment made in the proceeding must therefore be made to the defendant in the way of damages for an injury; and there is no law known to us which excludes a defendant in a case from the right of showing by legal testimony the extent of an injury which is the subject for ascertainment and assessment.

All the provisions of the law under consideration must be read and construed so as to correspond with section 14, article 1, of the Constitution, which provides that "private property shall not be taken, or damaged, for public use, without compensation having been made or paid into court for the owner." That constitutional provision is broad enough to include all cases in which private property is attempted to be taken under the power of eminent domain. And the legislature, in carrying out the provision, has established the rule that where you take all a man's property for the public use, you must pay him its value; but where only a part of it is taken you must pay the value of that part and the damages, less benefits, for the injury which the taking and appropriation of the part may cause to his remaining land. Injury to what remains is therefore a proper subject of compensation: The right of ownership is unlimited except by the right of the State as regulated by the Constitution and laws; and when the State exercises its right, the owner has the legal right to prove by legal testimony any of the acts or things which may constitute injury to what remains of his land by the act of appropriation.

It is argued that the cost of fencing cannot be considered as an element of such injury, because the plaintiff has what is called a "No Fence Law" (Stats. 1873–74, p. 310); and therefore neither plaintiff nor defendant is bound to fence. But under such a statute, as at the common law, while no man was bound to fence his lands against the cattle of another, there may be a necessity for fencing in his own cattle, or otherwise protecting his land (*Rust* v. *Low*, 6 Mass. 94); and if the act of taking from him part of his land for the public use forces upon him the necessity of protecting what remains, he should be entitled to

show it.   You cannot take a man's land for a public highway, to run in such a way as to expose his remaining land to unlawful or other encroachments, and arbitrarily say to him there is no necessity for protecting your land by fences or otherwise. In the language of the Supreme Court of Illinois, "The injuries which the proprietor suffers by having his farm divided so as to make it inconvenient to pass to and from its different parts and to compel him to erect additional fences and all other injuries of a like character occasioned by the construction of a public work through it, are as proper subjects of inquiry in estimating the damages sustained thereby, as is the value of the land actually appropriated to public use."   (*Alton R. R. Co.* v. *Carpenter*, 14 Ill. 192.)   "What the public take," says the Supreme Court of New Hampshire, "is not simply the land covered by the road, but the right to make and maintain the road; and the injury to the whole tract may much exceed the value of the land actually taken.   The land may be inconveniently divided and additional fencing may be required.   A just and fair compensation for the right taken would be the actual damage done to the whole land, and such is the compensation which in equity the land owner ought to receive."   (*Mt. Wash. R. Co.* 35 N. H. 134.)   So where a committee had been appointed under a statute of Massachusetts, to locate a road adjudged to be necessary, and to estimate the damages any person may sustain in his property by the laying out of the road, it was held that in estimating the damages the committee were not confined to the value of the land covered by the road and the expense of fencing the ground, etc., but the owner was entitled to show any other actual damage, and the estimation ought to be according to the damage which he will in fact sustain in his property by the opening of the road.   (*Comm.* v. *Coombs,* 2 Mass. 489; Cooley's Con. Lim. 566; *Moulton* v. *Scott*, 1 Pennyp. Pa. 503.)

Taking part of a man's land for public use may not, in fact, force upon him the necessity to fence the remainder of his ground; but he has the legal right to show that such a necessity will arise out of the appropriation, and if the necessity shall be proved as a fact, the expense incident to it is a matter for the court in estimating the damage to which the owner is entitled. The court erred in excluding the evidence.

Judgment and order reversed and cause remanded for a new trial.

Ross, J., SHARPSTEIN, J., McKINSTRY, J., MYRICK, J., and THORNTON, J., concurred.