[Civ. No. 1022.   Third Appellate District.—September 7, 1912.]

REED ORCHARD COMPANY, a Corporation, èt al., Petitioners, v. SUPERIOR COURT OF THE STATE OF CALIFORNIA IN AND FOR THE COUNTY OF YOLO, and Hon. N. A. HAWKINS, Judge Thereof, Respondents.

EMINENT DOMAIN—POSSESSION OF RAILROAD COMPANY PENDING LITIGATION—DEPOSIT OF AMOUNT REQUIRED—INTERESTS NOT SEGREGATED—SUPERSEDEAS.—Where a railroad company had obtained a judgment in eminent domain, and, in compliance with section 1254 of the Code of Civil Procedure, had made the full amount of the deposits thereby required to secure all demands, though the value thereof is not segregated, the court had jurisdiction under that section to permit the railroad company to take possession of and use the property pending the litigation, and the appellate court will not issue a writ of *supersedeas* of such order for possession pending an appeal from the judgment.

ID.—OFFICE OF WRIT OF SUPERSEDEAS.—A writ of *supersedeas* will be allowed only when, in pursuance of some statute, there has been effected a stay of proceedings, to which the writ can relate; but if in any case the statute does not provide for such stay, the writ of *supersedeas* will not issue.

ID.—CONSTITUTIONALITY OF SECTION 1254 OF CODE OF CIVIL PROCEDURE. The validity and constitutionality of section 1254 of the Code of Civil Procedure, providing for the possession of the condemning railroad company pending an appeal, have been expressly adjudicated, and cannot now be questioned, since its object is to provide an adequate fund fully to reimburse the land owner, to be paid into court for that purpose, and thus to effectuate the constitutional intent.

ID.—CODE SECTION NOT REPEALED BY IMPLICATION.—Section 1254 of the Code of Civil Procedure has not been repealed by implication by the amendment of section 949 of the Code of Civil Procedure, as amended in 1905, which does not except condemnation proceedings from the general law of appeals enacted in section 949. That revised or amended act must be considered a new and original piece of legislation, having no relation to condemnation proceedings; while section 1254 is a special statute, applicable only to eminent domain. Repeals by implication are not favored, and the repugnancy between two statutes should be very clear to warrant the implication of repeals, especially where one is of special and local application and the other is matter of general legislation.

ID.—BURDEN OF PROOF ON CLAIMANTS TO SHOW DAMAGES—INTEREST OF OWNER ADJUDICATED — DEFAULTING MORTGAGEE AND LESSEE—APPEAL—SUPERSEDEAS.—The defendants in an action to condemn land have the burden to allege and prove their interests therein, and the value thereof. Where the interest of the owner of the land was properly adjudged, but the interests of a mortgagee and lessee thereof, who made default, were neither alleged nor proved nor found by the verdict, they cannot be heard, upon their appeal from the default judgment, to question the disposition of the fund deposited in court, upon a writ of *supersedeas*, merely because the jury failed to find upon their interests; and though they have a right of appeal, the consideration thereon must be confined to the jurisdiction of the the court or the sufficiency of the pleadings.

ID.—RIGHTS OF LESSEE VALUELESS—RIGHTS OF MORTGAGEE IN COURT BELOW.—Though an appellant cannot raise for the first time upon appeal objections not raised in the court below, yet, from the record, it may be fairly assumed that the interest of the lessee had fully expired and was valueless when the verdict was rendered, but that the interests of the mortgagee may still be protected either by a deficiency judgment upon the residue of the tract covered by the mortgage, or if there be any necessity therefor, the mortgagee may

resort to the fund in the custody of the court below, to satisfy any deficiency therein.

ID.— OPINION DENYING REHEARING IN BANK—QUESTION OF SUPERSEDEAS —INHERENT POWER OF COURT.—It is held by the supreme court, on denying a rehearing in bank, that the order is not to be construed as affirming the views expressed in the opinion of the appellate court upon the scope of the writ of *supersedeas* and the circumstances under which the writ will be issued; but that the power to issue a writ of *supersedeas* is one of the inherent powers of a court of appeals, to be exercised in any proper case, when it appears necessary to protect the rights of a litigant until final determination of his appeal.

APPLICATION for writ of *supersedeas* upon appeal from a judgment of condemnation of land.

The facts are stated in the opinion of the court.

Arthur C. Huston, and White, Miller & McLaughlin, for Petitioners.

T. T. C. Gregory, Elmer W. Armfield, C. J. Goodell, and Mastick & Partridge, for Respondents.

BURNETT, J.—This is an application for a writ of *supersedeas* to prevent the Vallejo and Northern Railroad Company from taking possession of certain real estate during the pendency of an appeal from a judgment of condemnation. The petition for the writ alleges that the Reed Orchard Company has been and now is the owner in fee of a certain tract of land containing one hundred and forty acres, more or less, in Yolo county, known as the Reed Orchard; that petitioner, the People's Savings Bank, has been and now is the holder of a deed of trust covering the whole of said property and securing over $35,000 due from the said Reed Orchard Company to said bank, the said deed of trust being of record in the county recorder's office of said Yolo county; that petitioner Komano has a lease of said premises for the term of five years beginning November 1, 1907, and that he has paid the rental to date, including $3,750 due January 1, 1912 (being one-half of the rental for the year ending November 1, 1912), but that the $3,750 due July 1, 1912, has not been paid; that on the fifth day of May, 1910, the Vallejo

and Northern Railroad Company began an action in the superior court of said Yolo county against petitioners to condemn, for railroad purposes, one hundred and four and one-tenth acres of said tract of land; that the summons in said action was served on the defendants named therein, petitioners herein; that said Reed Orchard Company appeared in said action and answered said complaint; that People's Savings Bank and said Komano did not appear in the action, but that evidence was received at the trial, without objection, "showing that the deed of trust to said People's Savings Bank was in full force and effect, and the said lease so owned and held by S. Komano was offered and received without objection and also testimony showing the net value of the crops grown on said premises and to which said tenant S. Komano would be entitled under said lease, and other evidence was received tending to show the value of his interest and the jury viewed the premises"; that a jury trial was had and a verdict was rendered on the twenty-second day of March, 1912, in favor of plaintiff, awarding to it the one hundred and four and one-tenth acres sought to be condemned, and fixing the value thereof at the sum of $104,100, but that said verdict did not separately assess or fix the value separately of the several estates and interests of the defendants; that on March 23, 1912, the superior court entered judgment on said verdict awarding the plaintiff the said one hundred and four and one-tenth acres, but said court did not, by said judgment or at all, fix, determine, or ascertain the interests or estates or value of the interests or estates of the various defendants in said action, or in any manner designate or show the value of each estate or interest therein separately; that within the time required by law, petitioners herein appealed from said judgment; "that the said Vallejo and Northern Railroad Company deposited in court the amount of the verdict, together with the costs for the defendants generally to be distributed to those entitled thereto, without naming the persons to whom the same was to be paid nor the respective amounts to be paid to any person or defendant in said action; that a final order of condemnation was entered by said court from which petitioners have appealed; that a notice has been served on petitioners by said railroad company that it would move said court to enter an order putting said company into possession

of said property and authorizing it to use the property during the pendency and until final conclusion of the litigation; and that said superior court and the judge thereof threaten to and will proceed to hear said motion and grant the same." A demurrer, on the general ground, has been filed herein by respondent and also an answer and return in which some of the allegations of the petition are denied, and the proceedings in the condemnation suit are more fully set forth than by petitioners. At the hearing it was also stipulated that this court might consider the fact that the lower court "made and entered its order fixing the sum of $25,000 as a further sum for a fund to pay any further damages and costs that might be recovered in said proceeding, as well as all damages that might be sustained by defendants, if for any cause the property shall not be finally taken for public use, and that then and thereafter the Vallejo and Northern Railroad Company deposited with the clerk of the said superior court of the county of Yolo the said further sum of $25,000, which said sum is still in the custody of said clerk."

For the two following reasons it is urged that the court should issue the writ: 1. By reason of said appeals the enforcement of the judgment in said condemnation proceeding has been stayed, and therefore the superior court has no authority to authorize the plaintiff in said action to take possession of or use said property until after the final determination of said appeals; and 2. In consequence of the failure of the jury and of the court to fix the value of the respective interests of the defendants in said action in and to the property condemned, none of petitioners can determine or demand from the clerk the amount of his respective interest. The duty of the jury to segregate the damages and to make the respective awards as contended for is claimed to be imposed by section 1254 of the Code of Civil Procedure, and by reason of said omission it is urged that there is really no valid judgment to be executed.

It is virtually conceded that the writ of *supersedeas* will issue to prevent action on a judgment only where the appeal from the judgment operates as a stay of proceedings. Or, as it has been stated: "Where the appeal acts as a *supersedeas,* the appellate court will issue a writ of *supersedeas* or stay of proceedings when the trial court is about to issue an execution

or other order with the intention of carrying the judgment into effect." (*Dulin* v. *Pacific W. & C. Co.,* 98 Cal. 304, [33 Pac. 123]; *Foster* v. *Superior Court,* 115 Cal. 279, [47 Pac. 58]; *Rose* v. *Mesmer,* 131 Cal. 631, [63 Pac. 1010]; *McAneny* v. *Superior Court,* 150 Cal. 6, [87 Pac. 1020].)

The first question to be determined, then, is whether the appeal taken by petitioners operated to stay proceedings upon the judgment of condemnation; and this is to be considered in the light of the principle that no stay of execution is effected by an appeal unless by virtue of some statutory provision. In the Foster case, *supra,* it is said: "The effect of an appeal from the judgment, upon the judgment appealed from, is a matter of statutory regulation, and as this effect is to be determined by a construction of the statutes under which an appeal is taken, the decisions in other states upon statutes differing from our own are not entitled to a controlling consideration." Under the facts admitted herein it is perfectly clear that certain provisions of the statute authorize the court below to make an order to permit plaintiff, the said railroad company, to take possession of and use the said property during the pendency of the litigation. Section 1254 of the Code of Civil Procedure provides that "At any time after trial and judgment entered or pending an appeal from the judgment to the supreme court, whenever the plaintiff shall have paid into court, for the defendant, the full amount of the judgment, and such further sum as may be required by the court as a fund to pay any further damages and costs that may be recovered in said proceeding, as well as all damages that may be sustained by the defendant if for any cause the property shall not be finally taken for public use; the superior court in which the proceeding was tried may, upon notice of not less than ten days, authorize the plaintiff, if already in possession, to continue therein, and if not, then to take possession of and use the property during the pendency of and until the final conclusion of the litigation, and may if necessary stay all actions and proceedings against the plaintiff on account thereof." Section 1257, following, is another special provision in reference to condemnation proceedings, and it makes applicable to said proceedings the general provisions of part 2 of the Code of Civil Procedure, relative to new trials and appeals, except as they are inconsistent with the provisions of

the title under which are found said sections 1254 and 1257. From the statement of facts already made it appears that a trial has been had, a judgment entered, an appeal has been taken, the plaintiff has paid into court for the defendants the full amount of the judgment and costs, together with the other sum demanded by said section 1254, and the statutory notice has been given for the hearing of the motion for an order to be let into possession of the property. There has been, there- fore, a full compliance, on the part of plaintiff, with the re- quirement of said section 1254, and unless there is some rea- son for holding said section invalid or that it has been re- pealed, petitioners' case as to the effect of the appeals, it would seem, must fail. The validity of the section, it may be said, has been directly adjudicated, and it cannot now be ques- tioned. In *San Luis Obispo* v. *Simas,* 1 Cal. App. 175, [81 Pac. 972], it was held, as stated in the syllabus, that ''Since the amendment to section 1254 of the Code of Civil Procedure, an order for possession after payment of the money into court may be made pending an appeal from the decree of condem- nation; and it was not error to refuse to permit proof of the appeal in making the order.''

In *Spring Valley W. W.* v. *Drinkhouse,* 95 Cal. 220, [30 Pac. 218], after judgment and pending an appeal, plaintiff took possession of the property by virtue of said section 1254, and in discussing that provision the supreme court said: ''The final conclusion of this litigation has not yet been reached, and if said section of the code is not in conflict with the con- stitution of the state, then this proceeding must fail, for the order of the trial court is still in full force and effect. This section is not in violation of any provision of the constitution, but directly in line with that instrument wherein it treats of such matters. . . . It would seem that the framers of both the constitution and the statute had in view the delays in- cident to condemnation proceedings, and the necessity in many cases of allowing property to be taken and used for a public use during the progress of the litigation, provided an adequate fund to fully reimburse the land owner was first paid into court.'' So in *Heilbron* v. *Superior Court.* 151 Cal. 275, [90 Pac. 707], in refutation of petitioners' argument that in no conceivable instance can a plaintiff in condemnation have a right of entry upon the condemned property until the

end of litigation has come, the supreme court declared: "This, of course, is not the meaning of the constitution, which, from its very reading, as well as from the construction which has been given to its language by this court, contemplates that such right of entry vests in plaintiff after the award by the jury of the amount of damages which the defendant will sustain by the taking of his property, whether that amount in the ultimate outcome of the litigation shall prove to be the true amount, or whether, as the result of appeals and new trials, the amount shall be finally determined to be more or less.    The constitutional provision is framed to accomplish this result, and unquestionably section 1254 of the Code of Civil Procedure has been carefully devised and drawn to further and effectuate the constitutional intent." Therein also is found this further statement: "The constitution merely guarantees that there shall be ascertained and paid into court before plaintiff's right of entry attaches, the amount of the judgment, and this, notwithstanding that that judgment may be reversed and that the defendant may ultimately obtain a verdict for a much larger amount of money.    We can see no constitutional objection, and none has been pointed out to us, which would invalidate a statute which confers upon a defendant in condemnation proceedings even greater rights, and even greater security for his recovery, than that which the constitution itself awards him."    This section, it may be remarked, has been variously amended by the legislature, but we need not trace its history fully.    It seems advisable, however, to call attention to some of its vicissitudes.    As enacted in 1872, it provided that "At any time *after service of summons,* the court may authorize the plaintiff" to continue in possession or to take possession upon the terms therein prescribed.    Subsequently this was changed so as to read: "At any time after trial by jury and judgment entered upon their verdict or pending an appeal from the judgment to the supreme court," etc., substantially as it is now.    In 1897 the statute was amended so as to authorize the plaintiff "at any time after the filing of the complaint and the issuance and service of the summons thereon" to take possession and use the property.    In this form it was decided to be unconstitutional by the supreme court in the case of *Steinhart* v. *Superior Court,* 137 Cal. 575, [92 Am. St. Rep. 183, 59 L. R. A.

404, 70 Pac. 629], in an opinion filed November 8, 1902. Therein it was held that, under the terms of the constitution, the preliminary possession cannot be authorized until the damage resulting therefrom has been judicially determined and the amount has been paid or tendered to the owner, the court saying, through Mr. Justice Temple: "I do not agree to the proposition that compensation is made to the owner by paying into court a sum of money before the damage has been judicially determined and where the property owner cannot take the money. Surely he is not compensated until he may take the money. It is not paid into court for him until he can take it." No doubt it was in view of this decision and to overcome the said constitutional objection that, in 1903, the section was again amended to read as it is now.

The other consideration to be noticed in this connection grows out of the contention of petitioners that this section has been repealed by implication by virtue of the amendment of section 949 by the legislature of 1905, [Stats. 1905, p. 22]. To state the proposition in the language of petitioners: "Section 949, Code of Civil Procedure, therefore, being general in terms and upon its face providing for a stay of proceedings in all cases not expressly exempt from its operation, and said section being the latest expression of the will of the legislature, should control section 1254, Code of Civil Procedure. Section 949 expressly specifies cases where the appeal does not stay execution. In 1905, as stated, the legislature enacted this section, but did not include among the exceptions therein specified condemnation proceedings. It is well settled that a revised or amended act must be construed as a new and original piece of legislation. (*Donlan* v. *Jewett*, 88 Cal. 530, [26 Pac. 370].)" It is believed, however, that respondent is wholly right in the contention that petitioners have thus furnished a striking example of *non sequitur*. It is well illustrated by respondent as follows: "At the time of the amendment to 1254, in 1903, section 949 read the same as it reads now, except that in 1905 another exception was added, namely, that relating to a judgment giving a stockholder or director the right to inspect the records of a corporation. In other words, the contention of counsel amounts to this: the title on eminent domain provided that an appeal should not stay proceedings in the court below; the general section upon

the effect of appeals was amended by adding another excep-
tion having no reference whatever to eminent domain; *ergo,*
the sections on staying proceedings in eminent domain were
repealed." The argument of petitioners seems rather to pro-
ceed upon the assumption that the provision in reference to
appeals in eminent domain was contained in the exceptions
provided in said section 949 as it existed prior to said amend-
ment of 1905. Whereas, the truth is, as we have seen, there
was and is a special statute applicable to eminent domain, and
section 949 contains the general law upon the subject of ap-
peals. This last is found in title 13 of part 2 of the Code of
Civil Procedure designated "Appeals in Civil Actions."
Sections 1254 and 1257 are in title 7, designated "Eminent
Domain," of part 3, headed, "Special Proceedings of a Civil
Nature." If any conflict in those sections should seem to
exist, therefore, it is proper to invoke section 4481 of the
Political Code, reading as follows: *"Conflicts between titles,
which to prevail.* If the provisions of any title conflict with
or contravene the provisions of another title, the provisions
of· each title must prevail, as to all matters and questions aris-
ing out of the subject matter of such title." As to the rule
of construction of general, and special provisions in a statute
the authorities are uniform. It is thus stated in *People* v.
*Pacific Improvement Co.,* 130 Cal. 445, [62 Pac. 740], through
Commissioner Cooper: "It is the established rule of construc-
tion that the law does not favor a repeal by implication, but
that where there are two or more provisions relating to the
same subject matter they must, if possible, be construed so
as to maintain the integrity of both. It is also the rule that
where two statutes treat of the same subject, one being special
and the other general, unless they are irreconcilably incon-
sistent, the latter, although latest in date, will not be held to
have repealed the former, but the special act will prevail in
its application to the subject matter as far as coming within
its particular provisions." Therein is quoted Judge Cooley
(Cooley's Constitutional Limitations, 6th ed., 182), wherein
he said: "The repugnancy between two statutes should be
very clear to warrant a court holding that the one later in
time repeals the other, when it does not in terms purport to
do so. This rule has peculiar force in the case of laws of
special and local application, which are never to be deemed

repealed by general legislation except upon the most unequivocal manifestation of intent to that effect.'' See, also, Lewis' Sutherland on Statutory Construction, 2d ed., sec. 274, and *Miller* v. *Engle,* 3 Cal. App. 330, [85 Pac. 159]. It is submitted that no intention was actually manifested by the legislature, in the said amendment of 1905, to repeal section 1254 or 1257, and in the light of the foregoing familiar rule of construction, it should be held that no repeal by implication was effected.

We do not understand that the cases cited by petitioners are necessarily inconsistent with this position.

In *Estate of McGee,* 154 Cal. 24, [97 Pac. 299], the two sections of the statute under consideration related to the same special subject, that is, the devolution of the title to the homestead premises in case of the death of one of the spouses, and it would seem that no doubt could exist as to the soundness of the decision that the later enactment, being irreconcilable with the earlier, must be recognized as the law upon the subject. The case, however, was decided upon the ground that the question had been settled by the decision in *Weinreich* v. *Hensley,* 121 Cal. 647, [54 Pac. 254], and *Estate of Fath,* 132 Cal. 609, [64 Pac. 995], the court stating, through Mr. Justice Sloss : ''It must be taken to be settled that the two code sections cannot be harmonized, and that as between them, effect is to be given to the later enactment.''

In *Kennedy* v. *Board of Education,* 82 Cal. 492, [22 Pac. 1045], it was held that the general statute applied to all cities. It would therefore necessarily follow that it controlled special statutes made applicable to particular cities. This case followed *People* v. *Henshaw,* 76 Cal. 436, [18 Pac. 413], wherein it was held that the act of March 18, 1885, entitled ''An act to provide for police courts in cities having thirty thousand and under one hundred thousand inhabitants, and to provide for officers thereof,'' repealed the act of March 10, 1866, establishing a police court in the city of Oakland, a city of a population between thirty and one hundred thousand inhabitants. The conclusion from the language used by the legislature was reasonable that the intent was to make the general statute applicable to all cities coming within its terms. It therefore became operative in the city of Oakland, and, while the supreme court properly said that ''The law does not favor

the repeal of statutes by implication, and will in all proper cases, in the absence of an express clause repealing a former act, so construe the new law that both may stand," yet it was compelled to hold that the later statute was repugnant to the earlier, that both could not stand together, and that therefore the earlier was repealed.

The case of *City of Los Angeles* v. *Pomeroy,* 132 Cal. 340, [64 Pac. 477], apparently in line with the contention of petitioners, was decided March 25, 1901, while section 1254 contained the unconstitutional provision permitting plaintiff to take possession "at any time after the filing of the complaint, and the issuance and service of the summons thereon." Attention is called to this fact in the opinion filed in the Simas case, *supra,* wherein it is said: "Since that decision was made, section 1254 of the Code of Civil Procedure has been so amended that as now in force it must be taken as creating an addition to the class of cases theretofore constituting exceptions to the general stay of proceedings provided for in section 946 of the Code of Civil Procedure." It may be added that this latter decision, as well as that of the Heilbron case, *supra,* was rendered subsequent to the enactment of said section 949 as amended in 1905, although it does not appear that the attention of the reviewing court was called to the amendment. We are satisfied, however, that both cases were correctly decided, and that effect should be given to the said special as well as to the general provision.

As to the contention of petitioners in reference to the segregation of the amount found due the defendants, we think several answers may be made, as suggested by respondent.

In the first place, plaintiff is required by the statute to deposit the *amount* of the judgment, whatever that may be. Plaintiff is not commanded to make any division of the fund among claimants or to specify how much is deposited for any particular claimant. Nor is it material that the judgment may be informal or erroneous, as this is a consideration for appeal or motion for a new trial. It is manifest that the asserted infirmity as to the verdict is not a jurisdictional defect which invalidates the judgment, but at most an irregularity to be reviewed in the proper proceeding. If from the record the judgment appeared to be void, a different question, of course, would be presented, but that is not the incident case.

If there was any failure by the jury to find upon the interest of any particular defendant, and this was error, it can be reviewed hereafter on appeal. The right of the plaintiff to obtain possession of the property is not made dependent upon the impeccability of the verdict. It is well settled that the regularity of the proceedings of the court, if within its jurisdiction, cannot be reviewed on prohibition. (*Beaulieu Vineyard* v. *Superior Court,* 6 Cal. App. 248, [91 Pac. 1015]; *Lange* v. *Superior Court,* 11 Cal. App. 5, [103 Pac. 908]; *Clark* v. *Superior Court,* 55 Cal. 199; *Powelson* v. *Lockwood,* 82 Cal. 614, [23 Pac. 143]; *Bishop* v. *Superior Court,* 87 Cal. 226, [25 Pac. 435].) In this respect the same rule must apply to *supersedeas.*

Again, since it appears from the petition herein that the Reed Orchard Company was the owner of the condemned property and the value of said property was found by the jury, the presumption would be, in the absence of a contrary showing, that this was the value of the owner's interest, and that the interest of the other defendants was of nominal or of no value. In this connection it is to be observed that the petition herein does not negative this presumption, since there is no allegation that the interest of either of the other defendants was of any value at the time the verdict was rendered. The situation here is analogous to that of *Scheerer* v. *Hutton,* 7 Cal. App. 527, [94 Pac. 850], wherein it is said: ''While it is true that the court did not make a finding as to the ownership of the leasehold, nor of its value, the intendments in favor of such judgment, however, lead to the conclusion that the court found as a question of fact, either that the leasehold possessed no value, or that no leasehold interest was held by petitioner in said premises.'' But the court goes on to say that: ''Whatever may have been the finding of the court in that regard as to the questions of fact, if not warranted by the evidence, it would have been error only. Or assuming that petitioner was the owner of the leasehold and that it had some value, the legal conclusion of the court that petitioner was entitled to no part of the compensation would have been at most but an error at law; either of which errors could properly be reviewed upon appeal.'' (See, also, *In re Road in Kingston Township,* 134 Pa. 409, [19 Atl. 750]; *Taintor* v. *Mayor of Cambridge,* 197 Mass. 412, [83 N. E. 1101].)

It would also seem clear that the defendants had the burden of alleging and proving their interests and the value thereof, and that only the defendant meeting that burden should be permitted in this proceeding to question the disposition of the fund.    The People's Savings Bank and Komano having been regularly served with summons, and having failed to appear and urge any claim to whatever fund might be awarded, should not be indulged now to stay this public improvement on the ground that the jury did not find the value of an interest which was not alleged to have any value and did not award these defendants money which in the lower court they declined to claim.    If the owner of a mortgage or of a leasehold interest can lie by in this way until after judgment and successfully interpose such an objection, it is manifest that fraud is likely to be encouraged thereby at the expense of the public welfare.

In the case of *Yellowstone Park R. R. Co.* v. *Badger Coal Co.*, 34 Mont. 545, [115 Am. St. Rep. 546, 9 Ann. Cas. 470, 87 Pac. 963], the supreme court of Montana discusses the question at length, reviewing the constitutional and statutory provisions, which are apparently similar to ours, and declares that, "Construing these provisions together, it is apparent that the defendant is required to appear and make his defense as in ordinary actions.    And if he fails to appear and save default by one of the modes provided, he has no right to be heard in the subsequent proceedings.    This is so notwithstanding the provisions of section 2221, which requires the commissioners appointed to assess the damages to hear the allegations and evidence of all persons interested.    The latter provision certainly contemplates cases where the parties defendant are not in default, for if they must, notwithstanding their default, be heard by the commissioners, they may appeal (section 2224) and still have a jury trial as to the amount of damages—a situation which, in view of the provisions applicable to ordinary actions, would be absurd."    As suggested by respondent, this precise question as to the effect of the default of a defendant in a condemnation proceeding as to his subsequent conduct in the cause has not been determined in this state, yet it has been held that the burden of establishing value is upon the defendant and that he must allege and prove his damages.    (*Monterey County* v. *Cushing,* 83 Cal. 509, [23

Pac. 700]; *Drinkhouse* v. *Spring Valley W. W.,* 87 Cal. 255, [25 Pac. 420]; *San Diego Land Co.* v. *Neale,* 88 Cal. 55, [11 L. R. A. 604, 25 Pac. 977]; *Alameda* v. *Cohen,* 133 Cal. 5, [65 Pac. 127].) It necessarily follows that if a defendant must allege and prove the value of his property or the amount of his damage and he declines to claim any amount therefor, he is in no position to complain of any finding of a court or jury, at least in a proceeding like this, as to the value of the property sought to be condemned. The default of said defendants, of course, did not affect the duty of the jury to determine the value of the land which was taken, nor would they have been relieved of such duty if the owner had suffered default, since it is a constitutional requirement that property shall not be taken until compensation be made, but, without attempting to prescribe the exact limitations of the principle, it is sufficient to say that the defaulting defendants should not be heard here to question the disposition of said fund. A defaulting defendant undoubtedly has the right of appeal, but even then his attack must be confined to the consideration of jurisdiction or of the sufficiency of the pleadings. (*San Gabriel Valley Bank* v. *Lake View Land Co.,* 4 Cal. App. 630, [89 Pac. 360]; *Morenhout* v. *Higuera,* 32 Cal. 295; *Hutchings* v. *Ebeler,* 46 Cal. 559.)

In the Morenhout case, *supra,* referring to the effect of a default, it is said: "To say that the judgment is not conclusive upon them because they neglected to appear and exhibit their interests is preposterous. Such a doctrine would place it in the power of an obstinate tenant to defeat and prevent a partition in all cases by merely staying out of court. They were made parties and had an opportunity to appear and take part in the proceedings. Their default was a confession that they had no interest in the land, and the court had jurisdiction to so adjudge expressly. But had it not done so, and passed them in silence, the result would have been the same, for a judgment that the land belonged to the parties between whom it was divided would have been equally as conclusive against their title, they having been made parties and served with process."

Since there is no allegation to the contrary in the petition, we may assume, also, that no objection was made to the form of verdict rendered by the jury. It is true that the jury are

directed by the statute (Code Civ. Proc., sec. 1248) to "ascertain and assess the value of the property sought to be condemned and all improvements thereon pertaining to the realty, and of each and every separate estate or interest therein." But in a case where there are such separate interests of value and the jury returns a verdict informal in this respect, it is manifestly the duty of the aggrieved party to point out the defect that it may be corrected. If he fail to do so, it is only just that he should thereafter be precluded from complaining. Of course, the general principle is universally recognized as stated by Hayne on New Trial and Appeal, page 1555, as follows: "So that no principle or rule of appellate practice is more strongly entrenched, both by reason and by precedent, than that which requires objections or errors to be first brought to the attention of the trial court before the appellate court is asked to review them."

Section 619 of the Code of Civil Procedure provides that "When the verdict is announced, if it is informal or insufficient, in not covering the issues submitted, it may be corrected by the jury under the advice of the court, or the jury may be again sent out." It is readily admitted that the verdict may be so defective as to be subject to subsequent attack, although no objection be made at the time it is rendered, but the situation here is of a very different nature. Upon this point respondent cites the following cases: *Winans* v. *Christy,* 4 Cal. 80, [60 Am. Dec. 597]; *Algier* v. *Steamer Maria,* 14 Cal. 170; *Campbell* v. *Jones,* 41 Cal. 515; *Pacific Coast Ry. Co.* v. *Porter,* 74 Cal. 262, [15 Pac. 774]; *Big Lost River Irr. Co.* v. *Davidson,* 21 Idaho, 160, [121 Pac. 92]; *Metropolitan etc. Ry. Co.* v. *Eschner,* 232 Ill. 210, [83 N. E. 809]; *Golden Gate Mill Co.* v. *Joshua Hendy Machine Works,* 82 Cal. 184, [23 Pac. 45]; *Ryan* v. *Fitzgerald,* 87 Cal. 347, [25 Pac. 546]; *Johnson* v. *Visher,* 96 Cal. 314, [31 Pac. 106]; *Southern Missouri* v. *Wyatt,* 223 Mo. 347, [122 S. W. 588].

In the Davidson case, *supra,* decided by the supreme court of Idaho, it seems that a reversal was sought because separate awards had not been made for several tracts of land, section 5220 of the Revised Codes of that state being the same as said section 1248 of the California Code of Civil Procedure. After stating that it appeared that the several tracts were necessary for the intended use and that it would be presumed evidence

was received of the value of each parcel, it was declared that, in the absence of the instructions, "it will be presumed that the court correctly instructed the jury, and told them that in determining the question of value, they should separately assess and determine each different parcel. In returning the verdict, however, the jury seems to have found the aggregate value of the several parcels or tracts of land, and to have included therein the value assessed by them upon each separate parcel. This, of course, is not in accordance with the requirements of the statute, and it would have been better and more in conformity with the statute to have found separately the value of each separate parcel and the aggregate value of the damages for the several parcels. When said verdict was returned the appellant made no objections to the form of the verdict, or in any way called the trial court's attention to the fact that the verdict was not in conformity with the form required by the statute, and the insufficiency of the verdict was in no way called to the attention of the trial court. . . . We think, under the authorities and the decisions of this court that appellant waived any objections to the form of the verdict and cannot present the matter for the first time in this court."

In the Johnson case, *supra,* the supreme court of this state said: "If the defendant was dissatisfied with the form of the verdict, he should have asked at the time it was announced that it be made formal and certain; otherwise it was the duty of the court to construe it so as to give it the effect intended by the jury, if the intended effect could be ascertained from its language, considered in connection with the pleadings and evidence; provided, however, that the intended effect was not unlawful and not irrelevant to the pleadings. (*Truebody* v. *Jacobson,* 2 Cal. 270; *People* v. *McCarthy,* 48 Cal. 557; *People* v. *Perdue,* 49 Cal. 425.) And as a general rule, a party will not be heard to object to a verdict for the first time on appeal from the judgment, if it is susceptible of a construction which may have a lawful and relevant effect (*Douglas* v. *Kraft,* 9 Cal. 562), and this case does not appear to fall within any exception to the rule."

It may be added that, upon the assumption that the defaulting defendants had some interest in the property that was and is of substantial value, it is a fair inference that its adjust-

ment is a matter of mere computation, and that the apportionment among the claimants of the entire fund, which represents the full value of the property, will give rise to no unfriendly or troublesome disputation.   If there should be any serious controversy as to the extent of these interests, there is ample authority for the settlement of it by the court.   In connection with said section 1248 of the Code of Civil Procedure must be read section 1247, which provides that ''The court shall have power . . . 2. To hear and determine all adverse or conflicting claims to the property sought to be condemned and to the damages therefor.''

Again, as before seen, since there is no allegation that the lease is still in force, we may assume, as alleged in the answer of respondent, that by its terms it ceased to be operative on condemnation of the land, and it may for that reason be ignored as of no value.   As for the deed of trust or mortgage, it may be inferred that the residue of the one hundred and forty acre tract is abundant security for the payment of whatever may be due the mortgagee.   At any rate, under a long line of authorities, if there should be any necessity for it, the mortgagee may resort to the fund in the custody of the court to satisfy any deficiency.

In the *Matter of Morris Avenue,* 118 App. Div. 121, [103 N. Y. Supp. 182], it is said: ''The question as to the right to an award as between a mortgagee and the owner of the equity has arisen in several cases, and the rule seems to be well established that, where a mortgage has been given upon property prior to the taking of a portion thereof by the city, if upon a foreclosure and sale after the taking by the city the amount realized is insufficient to meet the mortgage debt, the lien of the mortgage would extend to and embrace so much of the damages as awarded as should be needed to make good the deficiency.   In the *Matter of the City of Rochester,* 136 N. Y. 83, [19 L. R. A. 161, 32 N. E. 102], where title to a part of certain mortgaged premises was subsequently foreclosed and the land sold by the original description, leaving a deficiency, the court said: 'The balance of the land only could be sold and conveyed on the foreclosure.   The referee's deed could convey, and did convey, only that balance, and the right of the mortgagee became merely an equitable lien on the fund

in the hands of the court to the extent of any deficiency which the land still should pay. The fund was not sold. It simply remained in the hands of the court for distribution.' " Numerous other decisions bearing upon the subject have been cited, among which are the following: *Kansas City* v. *North American Trust Co.,* 110 Mo. App. 647, [85 S. W. 682]; *Chicago K. & W. R. Co.* v. *Sheldon,* 53 Kan. 169, [35 Pac. 1105]; *Bright* v. *Platt,* 32 N. J. Eq. 370; *Union Mutual Life Ins. Co.* v. *Slee,* 123 Ill. 95, [12 N. E. 543]; *Markey* v. *Langley,* 92 U. S. 152, [23 L. Ed. 701]; *Buchanan* v. *Kansas City,* 208 Mo. 674, [15 L. R. A., N. S., 834, 106 S. W. 531]; *Wood* v. *Westborough,* 140 Mass. 410, [5 N. E. 613]; *Bates* v. *Boston Elevated Ry.,* 187 Mass. 337, [72 N. E. 1017].)

The foregoing considerations, in the main, probably would be more apposite to a motion for a new trial or an appeal from the order denying it or from the judgment, but it is conceived that they are also of importance in the determination of the character of the judgment, a question necessarily involved in the application before us.

Petitioners attach much importance to the case of *Butte County* v. *Boydston,* 64 Cal. 110, [29 Pac. 511], but it is to be observed that the decision therein was rendered on appeal from the judgment and order refusing a new trial, and no question was raised as to conflicting claimants to the fund. There was a failure to find the several elements of damage as required by the statute, and it was properly held that "the judgment is erroneous and must be reversed."

Some other points are discussed by counsel, but it is believed that sufficient consideration has been devoted to the subject, and that no reasonable doubt exists that under the law respondent can be justified in taking the contemplated action. The demurrer is therefore sustained and the order to show cause discharged.

Hart, J., and Chipman, P. J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on November 6, 1912, and the following opinion then rendered thereon:

THE COURT.—The petition that the application in the above-entitled matter for a *supersedeas*, originally heard and determined in the court of appeals, be given a hearing in this court is denied. This denial, however, is not' to be construed as an affirmance of the views expressed by the court of appeals as to the scope of the writ of *supersedeas* and the circumstances under which such a writ will be issued. The power to issue such a writ is one of the inherent powers of a court of appeals, to be exercised in any proper case when it appears necessary so to do to preserve the rights of a litigant until final determination of his appeal. (*Rogers* v. *Superior Court*, 158 Cal. 467, [111 Pac. 357].)

Chief Justice Beatty and Justice Sloss, deeming themselves disqualified, do not participate in the foregoing.