[Civ. No. 1414.    Third Appellate District.—October 31, 1916.]

## COLUSA AND HAMILTON RAILROAD COMPANY (a Corporation), Plaintiff and Petitioner, v. SUPERIOR COURT OF THE COUNTY OF GLENN, and HONORABLE WM. M. FINCH, Judge Thereof, and CHARLES H. GLENN, Defendants and Respondents.

EMINENT DOMAIN—APPEAL FROM JUDGMENT—STAY OF PROCEEDINGS—SUPERSEDEAS.—In an action in eminent domain to secure a railroad right of way, the taking of an appeal by the plaintiff from the judgment of condemnation prior to the expiration of the thirty-day period in which the plaintiff is required by section 1251 of the Code of Civil Procedure to pay the sum of money assessed, has the effect of staying execution on the judgment pending the appeal without the giving of a stay bond, and the appellant is entitled to a writ of *supersedeas* staying such execution.

ID.—NATURE OF JUDGMENT.—A judgment of condemnation is not, prior to the expiration of the thirty-day period, a judgment for the direct payment of money within the meaning of section 942 of the Code of Civil Procedure requiring the execution of an undertaking to stay the operation of the judgment pending appeal, but amounts to no more than an order fixing the price at which plaintiff may or may not take the property.

ID.—TIME OF PAYMENT OF DAMAGES—CONSTRUCTION OF SECTION 1251, CODE OF CIVIL PROCEDURE.—The "final judgment" mentioned in section 1251 of the Code of Civil Procedure relating to the time within which the plaintiff must pay the sum of money assessed as damages, has reference to the preliminary judgment of condemnation entered by the superior court, and not to the final conclusion of the litigation.

APPLICATION for a Writ of Supersedeas upon appeal from a judgment of condemnation of land.

The facts are stated in the opinion of the court.

Frank Freeman, and George R. Freeman, for Petitioner.

Charles L. Donohoe, and W. T. Belieu, for Respondents.

T. T. C. Gregory, Meredith, Landis & Chester, Frank H. Short, and Edward F. Treadwell, as *Amici Curiae*.

BURNETT, J.—In the above-entitled cause a rehearing was ordered by this court. The facts may be stated as fol-

lows: Petitioner is a railroad corporation and, as such, it brought in the superior court of Glenn County a suit in eminent domain to secure a right of way over respondent's land. With the assistance of a jury, a trial was had on April 26, 1915, which resulted in a verdict awarding plaintiff (petitioner herein) the 12.18 acres sought to be condemned, fixing the value of said land at the sum of $2,801.40, and assessing the damages, by reason of severance to that portion of the land of defendant not taken, at the sum of $14,130, making a total of $16,931.40 damages. Thereafter, on June 2, 1915, the Honorable Wm. M. Finch, judge of said superior court, made and entered a judgment adopting said verdict and containing the usual formal recitals, and also certain stipulations of the parties as to how the road should be constructed and concluding as follows: "It is further ordered, adjudged, and decreed that upon the payment of the said sum of $2,801.40 and the said sum of $14,130, to wit, the sum of $16,931.40 assessed, the plaintiff shall be entitled to a final order of condemnation which shall describe the property condemned and the purpose of such condemnation, which property shall be as described in the complaint herein, and which purpose shall be as stated in the complaint herein and that said railroad on said right of way shall be constructed in the manner prescribed in this decree, and the said property hereinafter described is hereby taken as a public use for the purposes described and set forth in the complaint, reference to which is hereby made, upon the said payment of the said total sum being made," and then followed a description of the land condemned. On June 11th, the plaintiff filed with the clerk of said court a notice of appeal, and on June 16th, said plaintiff filed a proper undertaking for costs on appeal. The petition for *supersedeas* herein alleged: "That notwithstanding the said perfecting of said appeal . . . defendant has applied to the Superior Court of the State of California, in and for the County of Glenn, and the Hon. Wm. M. Finch, judge of said court, for an order directing and compelling the clerk of said superior court to issue an execution in said action on said judgment for the said sum of $16,931.40 and costs of suit, and the said superior court and the said judge thereof has entertained said motion and said application and threatens to grant the same and order said Clerk of said Court to issue said execution to the end that it may be levied

upon the property of your petitioner, the plaintiff in the above entitled action, and the said defendant is not entitled to such order or such execution and your petitioner is entitled to a writ of *supersedeas* for the reason that the appeal taken from said judgment has suspended said judgment and the jurisdiction of said superior court . . . and said judgment has by reason of said appeal been stayed until after the final determination of said appeal. . . . That your petitioner, the plaintiff in the above entitled action, has not taken possession of the land involved in said action or any portion thereof and has not made and is not now making any attempt to take possession of said land.''

In the opinion hereinbefore filed for reasons therein stated, an order was directed denying the writ. The decision was based largely upon our conception of what had been held by our supreme court in certain cases, to which attention was directed. The fundamental principles leading to the conclusion which we reached are manifestly that the judgment rendered in the superior court is ''a money judgment'' in the sense of section 942 of the Code of Civil Procedure and that such judgment is the ''final judgment'' contemplated by section 1251 of said code.

We venture to consider again the various decisions cited and to endeavor to clear up what seems to be a somewhat complicated situation. In doing so, we shall not attempt to segregate these decisions as they bear more directly upon one or the other of these propositions, but it will be more convenient to view them rather indiscriminately as they relate to one or both of these principles.

At the outset, it may be said that of course there is no contention that the judgment has become final in the sense of a ''final conclusion of the litigation.'' It is admitted by both parties that, as said in *Gillmore* v. *American C. I. Co.*, 65 Cal. 63, [2 Pac. 882], ''Until litigation on the merits is ended, there is no finality to the judgment, in the sense of a final determination of the rights of the parties, although it may have become final for the purpose of an appeal from it.'' It is, though, claimed by respondent that section 1251 of the Code of Civil Procedure providing that ''the plaintiff must within thirty days after final judgment pay the sum of money assessed'' does not refer to the end of litigation, but to the judgment as entered or rendered in the superior court

and, of course, it is contended that this judgment is one directing "the payment of money" in the sense of section 942 of said code. If it were *res integra,* I should be inclined to the conclusion that said expression used in said section 1251, "after final judgment" has the same signification as "after judgment becomes final." The peculiar form of expression, the definite article *the* being omitted before the word *final* is a significant circumstance in this connection. Respondent's interpretation would be more persuasive if the legislature had provided that the money should be paid within thirty days "after *the* final judgment."

Again, the use of the term "final" is of great importance. Why should the word be used at all if it was intended to make the judgment of the superior court the initial point for computation of the time? Is it not fair to say that if such had been the intention, it would have been provided that the money should be paid within thirty days "after judgment," or "after the judgment," or "after judgment in the superior court?" Any of these expressions or equivalent ones would have placed the matter beyond question, and it seems hardly credible that the deliberate use of the qualifying term "final" was not for the purpose of postponing the declared effect of the judgment until *finality* had attached to it.

Again in section 1254 where the legislature had in mind the judgment as rendered in the superior court, it is interesting to notice the nomenclature used. Therein it is provided: "At any time after trial and *judgment* entered or pending an appeal from the judgment to the supreme court, whenever the plaintiff shall have paid into court, for the defendant, the full amount of the *judgment,* and such further sum . . . the court . . . may . . . authorize the plaintiff . . . to take possession of and use the property during the pendency of and until *the final conclusion of the litigation.* . . . The defendant, who is entitled to the money paid into court for him upon any *judgment,* shall be entitled to . . . receive the same . . . upon obtaining an order therefor from the court. It shall be the duty of the court . . . upon application . . . by such defendant, to order and direct that the money so paid into court for him be delivered to him upon his filing a satisfaction of the *judgment,*" etc. It is *the judgment* or *judgment* rendered in the superior court not *final judgment* as in the pre-

vious quotation.   Herein is also reference to an *appeal* and *the final conclusion of the litigation.*   Such contingency, we may reasonably conclude, was also in the mind of the legislature when it used the terminology "final judgment" in said section 1251 and that it contemplated "the final conclusion of the litigation."   However, it has been decided otherwise by the supreme court as we shall presently see, and we are bound by that decision.

Moreover, it is not proper to say that the judgment under consideration is one directing the payment of money.   It is rather an adjudication that upon payment of a certain sum plaintiff may acquire the property.   It did not vest the title to the money in defendant nor the real property in plaintiff.   It is rather a conditional award to plaintiff upon the payment of a certain price for the land.   It cannot be fairly construed as creating or evidencing a present and unqualified obligation to pay any sum of money.   When said judgment was rendered, plaintiff had the right to decline to take the land at the price fixed.   No doubt, the payment was purposely made contingent in view of the further proceedings that were open to the parties.   Thus it is provided in section 1255a that "plaintiff may abandon the proceedings at any time after filing the complaint and before the expiration of thirty days after final judgment, by serving on defendant and filing in court a written notice of such abandonment."   It is therefore plain that plaintiff was not "required to perform the directions of the judgment" at the time it was rendered.   It could not, therefore, be enforced by a writ of execution, and it has been held that said section 942 applies only to a judgment which directs the payment of a specific amount of money and which can be directly enforced by a writ of execution.   (*Estate of Schedel,* 69 Cal. 241, [10 Pac. 334] ; *Born* v. *Horstmann,* 80 Cal. 452, [5 L. R. A. 577, 22 Pac. 169, 338] ; *Pennie* v. *Superior Court,* 89 Cal. 31, [26 Pac. 617] ; *McCallion* v. *Hibernia Sav. & Loan Soc.,* 98 Cal. 442, [33 Pac. 329] ; *Kreling* v. *Kreling,* 116 Cal. 458, [48 Pac. 383] ; *Owen* v. *Pomona Land etc. Co.,* 124 Cal. 331, [57 Pac. 71] ; *Los Angeles* v. *Pomeroy,* 132 Cal. 340, [64 Pac. 477].)

We may now take up the leading authorities cited by petitioner and respondent as relating directly to the two propositions aforesaid.

In section 785 (third edition) of Lewis on Eminent Domain, it is said as to the character of the judgment: "Some cases hold that it is proper to render a personal judgment upon the verdict of a jury in condemnation cases, and to award execution, the same as in common law suits. If the statute is so far silent upon the subject as to leave the matter open for judicial construction, then the proper judgment to be entered will depend upon the following considerations: If the possession has already been taken of the property, either by consent or otherwise, or if the property has already been taken by virtue of an instrument of appropriation, as it may be in some states, before the compensation is paid, then a personal judgment with all its incidents may properly be entered. But, if the property has not been entered upon and cannot be until compensation is made, and the effect of the proceedings is to fix a price at which the petitioner can take the property if it elects so to do, then a personal judgment is improper and should not be entered." And in section 955, the same learned author says: "The weight of authority undoubtedly is that, in the absence of statutory provisions on the question, the effect of proceedings for condemnation is simply to fix the price at which the party condemning can take the property sought, and that even after confirmation or judgment the purpose of taking the property may be abandoned without incurring any liability to pay the damages awarded."

A large number of cases bearing upon the text is reviewed and an extended quotation made from the opinion of Chief Justice Beasley of the court of errors and appeals of New Jersey in the case of *O'Neill* v. *Freeholders of Hudson*, 41 N. J. L. 161, concluding with the declaration that "the legal effect of the proceedings for condemnation should be held that they compel the landowner to offer the public the required land at the ascertained price, and that when such price has been finally ascertained, the public has a reasonable time within which to make an election either to accept or reject the offer." Judge Beasley's language applies to the situation here. Until thirty days after "final judgment," such election may be exercised, and until the expiration of said period the judgment does not operate as conclusive evidence of an unconditional or absolute obligation to pay the amount assessed. It would seem, therefore, that until said period had expired, it could not be regarded as a "personal

judgment'' with all its incidents. It is at least clear that at the time said appeal was taken no execution could issue on said judgment, and it could be regarded as simply ''fixing the price at which the condemning party could take the land.''

We proceed to other citations. In *California Southern R. R. Co.* v. *Southern Pac. R. R. Co.,* 67 Cal. 59, [7 Pac. 123], it is said: ''The judgment based in part on the assessment of damages, and adjudicating that the use is public, and the taking necessary, etc., is the 'final judgment' from which an appeal may be taken. The sum of money assessed must be paid within thirty days after 'final judgment.' (Code Civ. Proc., sec. 1251.) It may, as suggested, be an inaccurate use of terms to designate as *final* a judgment, which the court may set aside (with all the proceedings on which it is based) if the sum of money assessed is not paid. (Code Civ. Proc., sec. 1252.) And ordinarily a judgment is not final when the law contemplates further and subsequent proceedings in the same court to precede the absolute determination of the rights of the parties. But the question is not what is or is not a final judgment, within the appropriate meaning of the terms, but what is intended to be designated as the final judgment in the title treating of eminent domain.''

In *Lincoln Northern Ry. Co.* v. *Wiswell,* 8 Cal. App. 578, [97 .Pac. 536], the question was whether the plaintiff could, within thirty days after the entry of judgment on the verdict, abandon the route set out in the complaint, and in holding that it had such privilege, the court said: ''The final judgment mentioned in section 1251, as to payment of which reference is made in section 1252, is the judgment fixing the amount of damages, and is a final judgment in the proceeding and is an appealable judgment (*California Southern R. R. Co.* v. *Southern Pac. R. R. Co.,* 67 Cal. 59, [7 Pac. 123] ; the subsequent final order of condemnation (sec. 1253) being an order after final judgment.''

The statutes of Idaho on Eminent Domain seem to be the same as ours, and in *Big Lost River Irr. Co.* v. *Davidson,* 21 Idaho, 160, [121 Pac. 88], it is said: ''The statute does not provide the form of judgment to be entered for the damages fixed and assessed by either the court, jury or referee, under the provisions of section 5220; but under that section of the statute there could be but one form of judgment, and that would be a common, ordinary form of judgment for the

recovery of money, the amount determined by the court, jury or referee, and is the final judgment mentioned in section 5223 of the Revised Codes, and is a judgment *in personam* against the plaintiff, and upon which an execution may issue as provided by section 5224 of the statute. . . . After a final judgment has been entered the plaintiff has thirty days within which to pay the same, and if payment is not made then execution may issue, as in civil cases. *Glenn County* v. *Johnston,* 129 Cal. 404, [62 Pac. 66]; *County of Madera* v. *Raymond G. Co.,* 139 Cal. 128, [72 Pac. 915]. . . . There would be no reason for the provisions found in section 5224, providing for an execution, if there was to be no judgment entered for the damages assessed, either by the court, jury, or referee. The very fact that an execution is authorized to be issued presupposes and presumes that an entry of a personal judgment for the damages assessed will be entered, upon which such execution is to be issued.''

In *Union Ry. Co.* v. *Standard Wheel Co.,* 149 Fed. 698, [79 C. C. A. 386], the question involved was whether, after judgment assessing damages, plaintiff or petitioner was authorized to dismiss the proceedings as to a portion of the land sought to be condemned merely because in its opinion the damages assessed were too high and in holding to the contrary, the court said: ''When a party undertakes to subject another's property to his own use, he must be deemed to be willing and intend to pay a fair price for it, and that such fair price shall be fixed by the verdict of a jury to be approved by the court. Good faith requires that he shall not use the power of the court to vex the other party with successive experiments in the effort to get what he wants at his own price. And the public has an interest in the finality of the judgment. It will endure one litigation between parties, but not a repetition of it, to give one of them a chance to get a better result.'' And as to the judgment fixing the price to be paid for the land, it was declared that the jury was to assess the damages and the court to render judgment and: ''The defendant is bound by it, and so is the petitioner; on principle as we think, but also by force of the statute.''

*Drath* v. *Burlington etc. R. R. Co.,* 15 Neb. 367, [18 N W. 717], and *Neal* v. *Pittsburgh etc. R. R. Co.,* 31 Pa. St. 19, declare a similar doctrine.

However, it may be permissible to notice these cases a little more specifically.

In the first, the Southern Pacific Railroad Company, one of the defendants, appealed from the preliminary order, and also from the final order of condemnation, and the real question presented as far as the judgment is concerned was whether the preliminary order or the final order of condemnation was the judgment from which the appeal should be taken. The supreme court held that the preliminary order of condemnation "is the 'final judgment' from which an appeal may be taken," and dismissed the appeal from the final order of condemnation because not taken within sixty days. The question of what is contemplated by "final judgment" as referred to in the first clause of said section 1251, or when the money must be paid, was not discussed in the briefs and had no bearing upon the disputed points involved in the appeal.

In the Lincoln Northern Railway Co. case, *supra,* the court on motion of plaintiff dismissed the proceeding within thirty days after the preliminary order of condemnation and the defendant appealed from that order. It is apparent that under any possible construction of said section 1251, plaintiff was not required to deposit the money before the expiration of thirty days from the preliminary order of condemnation. Hence, it could not be said that plaintiff was in default, or that it did not have the right to abandon the proceedings, whether "after final judgment" as used in said section 1251, has the meaning attributed to it by petitioner or by respondent.

In the Idaho case "the only issue presented by the pleadings" as stated by the court, "was the value of the land to be taken. The right to take the land described in the complaint, and the necessity for such taking, is admitted by the answer and the description of the land as alleged in the complaint is also admitted by the answer, and the allegation in the answer as to the necessity for taking eighty additional acres is not denied or put in issue, and therefore must have been admitted by the appellant, leaving for determination the value of the land described in the pleadings as the only issue to be determined in said cause." The jury returned a verdict "for the defendants" and assessing "defendants' damages in the sum of $55,593." Whereupon the trial court, after reciting the formal and preliminary matters, entered

the following judgment: "Wherefore by virtue of the law and by reason of the premises aforesaid, it is ordered, adjudged, and decreed that the said defendants have and recover from said plaintiff the sum of $55,593 with interest thereon at the rate of seven per cent per annum from the date hereof until paid, etc." From that judgment an appeal was taken by plaintiff and the language hereinbefore quoted appears to have been used with reference to the contention of appellant: "That the court erred in entering an unconditional personal judgment against the appellant."

The question as to the import of the phrase, "final judgment," or when the money had to be paid, was not involved, but the court was called upon to determine the character of the judgment to be entered and it did hold that "a judgment *in personam*" was authorized, treating the amount of the award as damages. As to the Idaho case, it may also be said that the judgment in form created a present obligation for the immediate payment of a definite sum of money upon which an execution could issue. It was not conditional and tentative as in the case at bar.

Of the California cases cited in the Idaho decision, the first, *Glenn County* v. *Johnston,* 129 Cal. 404, [62 Pac. 66], involved a motion to dismiss a condemnation proceeding brought by Glenn County for the reason that more than thirty days had elapsed since the entry of the judgment, and payment had not been made to defendants. The court below denied the motion but the supreme court reversed it, thus virtually holding that "after final judgment" refers to the entry of the preliminary order of condemnation in the superior court. It may be admitted, as claimed by petitioner, that there was no discussion in the briefs as to what constituted the "final judgment"" within the purview of said section, the principal subject of controversy being as to whether the sections in question applied to counties, but as stated, the point was necessarily involved in the decision. *County of Madera* v. *Raymond G. Co.,* 138 Cal. 244, [71 Pac. 112], did not call for the determination of the question considered herein, although said first clause of said section 1251 was quoted in the opinion in connection with the discussion of the form of judgment required, the conclusion being reached that "even if the form of the judgment was not as it should be, defendant

was not injured thereby and cannot complain, and plaintiff makes no objection to the form of its judgment.''

In *Bensley* v. *Mountain Lake Water Co.*, 13 Cal. 306, 317, [73 Am. Dec. 575], it is said: ''The right to take on the terms adjudicated—which is a compulsory statutory sale—accrues from the legal proceedings—the petition—the report—the confirmation; then the price becomes fixed. But no right of entry—much less a title—accrues so far. The party condemning, the representative of a state, is then in a condition to be a purchaser; the other party is in a situation of a vendor making an agreement of sale on condition precedent, but retaining his title and possession until payment.''

The theory thus presented harmonizes with petitioner's claim that the award constitutes the determination of the price that must be paid for the property, if it be taken, rather than a personal judgment for the direct payment of money.

In *Lamb* v. *Schottler*, 54 Cal. 319, it was held that ''the right of the state to take private property for public use in no sense depends upon any contract between the owner and the public, nor is there any vested right to compensation, until the property is taken; nor is the government under any obligation to take the property if the terms, when ascertained, are not satisfactory.''

But the case most strongly relied upon by petitioner is *Pool* v. *Butler*, 141 Cal. 46, [74 Pac. 444]. Therein the appeal was from an order dismissing the action made upon plaintiff's motion. The action was to condemn a strip of land for a ferry landing. There was a prior appeal from the judgment condemning the land for said purpose in which the judgment was affirmed. In that case the trial court gave judgment to the plaintiff condemning the land to the burden of the easement, and assessing the damages at $285. The defendants upon the trial reserved several exceptions and moved the court for a new trial upon all the issues and the motion was denied. From this order also an appeal was taken. The plaintiff deposited with the clerk the said sum of $285 and costs, within thirty days after the entry of judgment. The defendants did not accept the money so deposited, but took and perfected their appeal, and did not abandon all defenses except for greater compensation, and could not demand or obtain the money until the appeal should be determined. It is to be observed that in that case the appeal

was taken by the defendants, and under section 1254 of the Code of Civil Procedure they could not get the money without abandoning all the defenses they had to the action except as to the sufficiency of the damages awarded; and such defenses were not abandoned, but were pressed upon the motion for new trial and in the supreme court on appeal. As stated in the opinion: "If they had applied to the court for an order directing the clerk to pay over the money, it could not have been granted pending the motion for a new trial, or at any time after the appeal was taken until the judgment was affirmed or the appeal dismissed." It is thus to be seen how different that case is from this in the very important consideration that therein it was not doubted that the appeal operated to suspend or stay the judgment and the persons who were entitled to the money refused to accept it. As the court said: "The court had no power to make the requisite order for the payment of the money, the judgment having been suspended by the appeal, which was a refusal to accept the money, or to treat the judgment as a final determination of the rights of the parties, though it was in form final."

Judgment in the court below was entered June 21, 1898, and the appeal was decided December 3, 1901, and became final, according to the declaration of the supreme court, January 2, 1902, a period of three and a half years after judgment in the court below. Furthermore declared the court: "Such delay may have furnished in this case, and might in many others, sufficient reasons for an abandonment of the enterprise. During all that time defendants were protesting against the judgment, and when plaintiffs finally relieved them from what they insisted was a wrong, oppressive, and erroneous judgment by dismissing the proceeding, now appeal from the order relieving them from it. The ultimate question, however, is whether the court erred in dismissing the action." And it is in view of this situation that the court entered into a learned discussion of the nature of condemnation proceedings and came to the consideration of the question at what stage of such proceedings a plaintiff may abandon an enterprise or decline to take the property. It was clearly right to hold that during the pendency of the motion for a new trial and of the appeal by the defendants, the plaintiffs had the right to abandon the enterprise and refuse to pay the compensation. But it was contended that having deposited

the money with the clerk of the court, they could not withdraw it, and that upon the affirmance of the appeal the defendants were entitled to receive it, and this is the vital point of the whole case. As to that contention, it was said: "I think plaintiffs had the right to abandon at any time before the defendants were willing to receive it, or were in a position to demand it." Thus far it would seem no one could disagree with the court. Furthermore said the court: "The deposit under the circumstances was only a tender, and in such cases the money tendered does not vest in the person to whom it is tendered unless it is accepted. In this case, the deposit was not accepted. The defendants persisted in their contention that the judgment was erroneous and invalid, and sought to have it reversed and could hardly contend that the money or the right to it was vested in them so long as they contended that the plaintiffs had no right to the land."

No such contention is made by the defendant here. On the contrary, he was satisfied with the judgment and seeks to obtain the money. He claims, also, that said judgment was not stayed by the appeal for reasons already stated. The court proceeded: "The vesting of the title to the deposit in the defendants is coincident with the vesting of the right to the land for the purposes for which it was sought, but pending the appeal the plaintiffs could assert no right to the land or its use under the judgment which had been stayed and suspended by the appeal, during which time the court was powerless to enforce it; nor could the defendants say, 'The right to the money is vested in us, but you shall not have the land.' " The foregoing as applied to the facts of that case cannot be disputed, but here the defendant asserts the title to the money for the reason that the judgment has not been stayed, that he is willing for plaintiff to take the land at the assessed price, and that by virtue of the express provisions of the statute he is authorized to reduce the money to his possession. The opinion proceeds: "The title to the land does not vest in the plaintiffs until 'the final order of condemnation' is made by the court and a copy of the order filed in the office of the county recorder 'and thereupon the property described therein shall vest in the plaintiff for the purposes therein specified. (Code Civ. Proc., sec. 1253.)' " After citing certain decisions, the court then comes to the consideration of the question as to when or

within what time the plaintiff in condemnation proceedings may abandon them and decline to take the property, and it quotes said statement of Lewis as to the weight of authority, and Dillon on Municipal Corporations (fourth edition, section 608) as follows: "Under the language by which the power to open streets and to take private property for that purpose is usually conferred upon municipal corporations, they may at any time before taking possession of the property under completed proceedings, or before the final confirmation, recede from or discontinue the proceedings they have instituted. This may be done, unless it is otherwise provided by legislative enactment, at any time before vested rights in others have attached," and quotation is made from the case of *St. Louis etc. R. R. Co.* v. *Teters,* 68 Ill. 144, to the effect that: "Where the company has not appropriated the land at the time of the trial, it would be improper to render a judgment for the recovery of the money, or to award execution, because it could not be known that the company will ever enter upon the land. It is, under the statute, the payment of the money found by the jury, and not the order of the court alone, that confers the right. Although the petition has been filed, the damages assessed, and the order of the court pronounced and entered, the money must be paid before the right to enter attaches, and until they pay the damages, they have the right to abandon the location of the route thus made, and adopt some other. Hence, it is improper to render a judgment of recovery or award execution, unless the jury find, or it conclusively appears from the record, that the company has entered and is in possession of the land sought to be condemned." The court adds: "Justice requires that where possession has not been taken and the purpose for which condemnation was sought has been abandoned, that the award of damages should not be enforced, especially where the defendants have prevented for an unreasonable time the accomplishment of the purpose."

If this doctrine is to be applied to all cases where the plaintiff has not entered into possession, of course that would end the controversy, and the writ should issue. But the aforesaid statements must be accepted with some qualification. Even where the plaintiff has not entered into possession, he is limited in time within which he must exercise his option to abandon the proceedings. It must be exercised at least

within thirty days after the judgment becomes final. (Code Civ. Proc., sec. 1255a.)   In construing the language of this interesting decision we must not lose sight of its peculiar facts, or else we may run counter to the plain provisions of the statute.

In *Reed Orchard Co.* v. *Superior Court,* 19 Cal. App. 648, [128 Pac. 9, 18], it was held that "where a railroad company had obtained a judgment in eminent domain and in compliance with section 1254 of the Code of Civil Procedure had made the full amount of the deposits thereby required to secure all demands, the court had jurisdiction under that section to permit the railroad company to take possession of and use the property pending the litigation, and the appellate court will not issue a writ of *supersedeas* of such order for possession pending an appeal from the judgment."

It was in view of that situation that it was declared an appeal would not postpone plaintiff's right to take possession of the property. The decision was grounded upon the peculiar provision of said section 1254 which would, manifestly, be rendered nugatory if its operation was suspended during an appeal. The case really has no application to the facts involved herein.

It is manifest that the different cases cited cover variant aspects of condemnation proceedings, and the peculiar situation of each must be regarded to avoid being misled into a general application of the statements made in the several opinions.

. Here, we may reiterate, the situation is this: Plaintiff was dissatisfied with the award, has not taken possession, but has taken an appeal from the judgment. Said appeal has not been determined and, hence, said judgment has not become . final. No undertaking was given to stay execution, it being the claim of plaintiff that no such undertaking was required to effect said purpose. The defendant was willing to accept the award, took no appeal, but after the expiration of thirty days from the entry of the preliminary order of condemnation, sought execution.

The determination of the controversy then depends upon the following considerations:

1. Does the phrase "after final judgment" in said section refer to the preliminary judgment of condemnation as entered in the superior court? That has been answered in

the affirmative by the supreme court in *Glenn County* v. *Johnston,* 129 Cal. 404, [62 Pac. 66], where the question was necessarily involved and we must follow it.

2. Was the judgment of such character that execution could issue upon it? This is plainly answered by said section 1252 providing that if the money be not so paid or deposited (that is, paid or deposited within thirty days after the preliminary judgment of condemnation), execution may issue as in civil cases. This is a matter that the authorities hold can be regulated by statute. If execution can issue to enforce the payment of the amount of the award, the judgment must at that time be equivalent to a personal judgment for the payment of money. Prior, however, to this period beginning thirty days "after final judgment," the judgment amounts to no more than an order fixing the price at which plaintiff may or may not take the property. It is, in effect, an adjudication of the amount which plaintiff should pay as a just compensation for it to be entitled to take the property for *the purpose claimed,* but if the status is not changed by some other proceeding, after the expiration of said thirty days, it becomes substantially a personal judgment for the direct payment of money.

3. What, then, was the effect of said appeal? It stayed the operation of the judgment for the reason that the character of said judgment must be determined as of the time when the appeal was taken. It was not then a judgment requiring the payment by plaintiff of a specific amount of money and which could then be enforced by a writ of execution. It was the adjudication of a conditional liability which might or might not become a fixed and absolute obligation. It was not, therefore, within the exception noted in said section 942.

The effect of the appeal being to remove the subject matter of the order from the jurisdiction of the lower court, that court is without power to proceed further as to any matter embraced therein until the appeal is determined. (*Vosburg* v. *Vosburg,* 137 Cal. 493, 496, [70 Pac. 473].)

In conclusion, it may be suggested that even if the appeal bond did not operate to stay proceedings, it would be proper for this court to allow petitioner to file an effective bond for that purpose. The authority for such procedure

is found in *Hill* v. *Finnigan*, 54 Cal. 494. Such request is made by petitioner if such action be deemed advisable by the court, but it is believed that the appeal has accomplished that result, and we think the writ should issue, and it is so ordered.

Chipman, P. J., and Hart, J., concurred.