STATE ET AL., APPELLANTS, v. BRADSHAW LAND & LIVE-STOCK CO., RESPONDENT.

(No. 7,328.)

(Submitted January 31, 1935. Decided February 23, 1935.)

[43 Pac. (2d) 674.]

98

*Mr. Raymond T. Nagle,* Attorney General, *Mr. John W. Bonner,* Special Assistant Attorney General, and *Mr. Rudolph Nelstead,* for Appellants, submitted an original and reply briefs; *Mr. Bonner* argued the cause orally.

*Mr. P. F. Leonard,* for Respondent, submitted an original and a supplemental brief and argued the cause orally.

*Mr. S. C. Ford, Amicus Curiae,* submitted a brief and argued the cause orally.

MR. JUSTICE ANDERSON delivered the opinion of the court.

The plaintiffs, state of Montana and state highway commission, brought this action to condemn a right of way over certain lands and premises owned by the defendant Bradshaw Land & Livestock Company located in Custer county, Montana, and mortgaged to the Federal Land Bank of Spokane, for highway purposes. The land bank has been eliminated as a party defendant.

The right of way sought to be condemned by plaintiffs traverses defendant company's land for approximately 6.25 miles. The acreage in the entire right of way is 89.86 acres. Approximately 4 acres thereof were theretofore conveyed to Custer county as a right of way for a county road. The course of the right of way is along the valley of Locate Creek. This is a narrow valley with hills rising on either side.

The defendant livestock company is owned by the Bradshaw family, who have for many years operated a cattle

ranch in that location. The buildings are all located in the valley of Locate Creek. Lands are owned by the company on both sides of the creek and right of way. In the valley of the creek are found the company's meadow lands on which hay is produced to carry on the operations of the company. The company's lands lying outside the valley of Locate Creek are all grazing in character.

The particular tract across which the right of way passes is in excess of 9,000 acres of contiguous land. The company owns altogether in this territory in excess of 18,000 acres, and has contracted to purchase in excess of 3,000 acres of additional lands over which it enjoys the right of possession. The lands owned by it, but not contiguous to the tract across which the right of way passes, are in various tracts non-contiguous to each other, of various areas. In addition, the company has leased other lands within the area used in the operation of its business. The major portion of all the lands owned, held under contract, and leased is inclosed with a common fence. Within this fence are found lands belonging to other individuals, corporations, and the United States government. In order to inclose all of these lands under one fence, the fencing is erected across the lands of third parties, in some instances with their consent and in others with their acquiescence, and in still others without any apparent protest on the part of the owners. Some of the lands within this inclosure belonging to third parties are fenced out of the inclosure, while others, similarly owned, are used by the company. The acreage included within the right of way is classified approximately as follows: 2 acres of meadow land, 8 acres of plow land, and 75 acres of grazing land.

Following the commencement of this action, commissioners were appointed to assess the damages, whose report was set aside. New commissioners were then appointed, and they awarded the defendant $12,500 as damages. Plaintiffs appealed from the award to the district court. A jury trial was had, and by its verdict it was determined that the value

of the land actually taken was the sum of $853.21; that the damages to the larger parcel of land from which the right of way was taken amount to $12,902; that the benefits to the lands from which the right of way was taken are the sum of $1,500; and that the total damages and compensation to which defendant was entitled was the sum of $12,255.21. Judgment was rendered on this verdict on December 1, 1933. Thereafter, pursuant to notice and hearing, an amended judgment was entered on December 15, 1933.

Prior to the trial plaintiffs had deposited in the district court the amount of the award of the commissioners and secured an order of possession. Following the trial an additional sum was deposited by plaintiffs with the clerk of the court in order to make the total deposit conform to the amount of the amended judgment. On January 11, 1934, the defendant accepted the fund deposited with the clerk of court for its benefit, and formally satisfied the judgment of record. On February 8, 1934, a final order of condemnation was entered and thereafter recorded in the office of the county clerk. On May 11, 1934, plaintiffs gave notice of their appeal to this court from the amended judgment bearing date December 15, 1933, and from the whole of the findings and judgment, and from each and every part thereof. An entry was made in the minutes of the court on December 5, 1933, extending the time within which to prepare, serve, and file a bill of exceptions for sixty days in addition to the time provided by law. Further extensions of time were thereafter allowed upon a showing by affidavits. Eventually, within the time so extended, a bill of exceptions was settled and filed.

Respondent has moved to dismiss this appeal, upon the ground that plaintiffs have secured possession of and title to the right of way. Defendant (respondent) has accepted the compensation and satisfied the judgment. It is argued in support of the motion that in this state of the record no appeal may be prosecuted to this court, and that the plaintiffs may not receive and accept the fruits of the

judgment, and at the same time attempt to set it aside. It is urged that the rule of this court, announced in the cases of *In re Black's Estate,* 32 Mont. 51, 79 Pac. 554, and *Richli* v. *Missoula T. & S. Bank,* 54 Mont. 127, 168 Pac. 41, is controlling here. Neither of these cases, however, had to do with proceedings in eminent domain.

Condemnation proceedings are special proceedings provided by statute. (*State ex rel. Davis* v. *District Court,* 29 Mont. 153, 74 Pac. 200.) Resort must, therefore, be had to the statutes for the solution of this question. The applicable portion of section 9937, Revised Codes 1921, provides that "the plaintiff or defendant, or any party interested in the proceedings, can appeal to the supreme court from any finding or judgment made or rendered under this chapter, as in other cases. Such appeal does not stay any further proceedings under this chapter." The pertinent portion of section 9952 reads as follows: "At any time after the report and assessment of damages of the commissioners have been made and filed in the court, and either before or after appeal from such assessment, or from any other order or judgment in the proceedings, the court or any judge thereof at chambers, upon application of the plaintiff, shall have power to make an order that upon payment into court for the defendant entitled thereto of the amount of damages assessed, either by the commissioners or by the jury, as the case may be, the plaintiff be authorized, if already in possession of the property of such defendant sought to be appropriated, to continue in such possession; or, if not in possession, that the plaintiff be authorized to take possession of such property and use and possess the same during the pendency and until the final conclusion of the proceedings and litigation, and that all actions and proceedings against the plaintiff on account thereof be stayed until such time. * * * The amount assessed as damages by the commissioners, or by the jury on appeal, as the case may be, shall be taken and considered, for the purposes of this section, until reassessed or changed in the further proceedings, as just compensation for the

property appropriated; but the plaintiff, by payment into court of the amount assessed, or by giving security as above provided, shall not be thereby prevented or precluded from appealing from such assessment, but may appeal in the same manner and with the same effect as if no money had been deposited or security given; and in all cases where the plaintiff deposits the amount of the assessment and continues in possession, or takes possession of the property, as herein provided, the defendant entitled thereto, if there be no dispute as to the ownership of the property, may at any time demand and receive from the court the money so deposited, and shall not by such demand of receipt be barred or concluded from his right of appeal from such assessment, but may, notwithstanding, take and prosecute his appeal from such assessment; provided, that if the amount of such assessment is finally reduced on appeal by either party, such defendant who has received the amount of the assessment deposited shall be liable to the plaintiff for any excess of the amount so received by him over the amount finally assessed, with legal interest on such excess from the time such defendant received the money deposited, and the same may be recovered by action,'' etc.

By sections 9950 and 9951 it is declared:

''9950. Payment may be made to the defendants entitled thereto, or the money may be deposited in court for the defendants, and be distributed to those entitled thereto. If the money be not so paid or deposited, the defendants may have execution as in civil cases; and if the money cannot be made on execution, the court or judge, upon a showing to that effect, must set aside and annul the entire proceedings, and restore possession of the property to the defendant, if possession has been taken by the plaintiff.

''9951. When payments have been made and the bond given, if the plaintiff elects to give one, as required by the last two sections, the court or judge must make a final order of condemnation, which must describe the property condemned, and the purposes of such condemnation. A copy of

the order must be filed in the office of the county clerk, and thereupon the property described therein shall vest in the plaintiff for the purposes therein specified.''

By these statutes the plaintiffs are accorded the right of appeal to this court. They must, in order to gain possession, pay the amount of the compensation and damages awarded into court. If they do not pay the amount of the judgment within thirty days, and a showing of nonpayment is made, the trial court must set aside the entire proceedings and restore possession. No method is provided for a stay of proceedings pending an appeal; in fact, the statute expressly declares that none of the proceedings provided for by statute shall operate as a stay of proceedings. It is expressly provided that the plaintiffs, by payment into court of the amount assessed, ''shall not be thereby prevented or precluded from appealing from such assessment, but may appeal in the same manner and with the same effect as if no money had been deposited or security given.'' These statutory provisions, if valid, are conclusive of the right of the plaintiffs to appeal.

Our attention has been invited by counsel appearing by leave of court as *amicus curiae* to the cases of *City of Spokane* v. *Cowles,* 67 Wash. 539, 121 Pac. 463, and *Colusa & H. R. Co.* v. *Superior Court,* 31 Cal. App. 746, 161 Pac. 1011. These decisions, by reason of the diveristy of the statutory provisions therein set forth, are wholly inapplicable and without any persuasive force in the solution of the question at hand.

It is urged that the obvious construction of the statutes adverted to renders them unconstitutional as being in violation of section 14, Article III, of our Constitution, wherein it is provided that ''private property shall not be taken or damaged for public use without just compensation having been first made to or paid into court for the owner.''

This court, in the early case of *State ex rel. Volunteer Min. Co.* v. *McHatton,* 15 Mont. 159, 38 Pac. 711, held that a statute providing for the payment of damages awarded into court, and the securing of an order for possession, even

though the defendant appealed to the district court and the appeal was undetermined, did not violate the above constitutional provision; this is in accord with the great weight of authority. (See note, 55 A. L. R. 201.)

This precise question was raised under statutes somewhat similar to our own and under like conditions in the case of St. Louis, M. & S. E. R. Co. v. Aubuchon, 199 Mo. 352, 97 S. W. 867, 868, 116 Am. St. Rep. 499, 8 Ann. Cas. 822, 9 L. R. A. (n. s.) 426, wherein it was written: "For constitutional purposes * * * the award of the commissioners (until disturbed) was, prima facie, the just compensation to which defendant was entitled before his property was taken. But for statutory and final purposes just compensation is flexible enough to mean, and does mean, the final amount awarded by a jury on a fair trial, * * * and defendant may not preclude plaintiff's right to litigate the question of damages by accepting the commissioner's award, and putting the money in his pocket." (See, also, 1 Nichols on Eminent Domain, 2d ed., 643.)

Counsel for defendant contends that the case of Great Northern Ry. Co. v. Fiske, 54 Mont. 231, 169 Pac. 44, is authority for his contention to the effect that plaintiffs are without right to appeal from the award of the commissioners to the district court. This court in that case, without deciding the question, expressed a doubt as to the existence of the right. The query there expressed was, however, affirmatively answered by Chapter 145, Laws 1927.

The motion to dismiss the appeal is without merit and accordingly is denied.

Defendant has moved to strike the bill of exceptions from the record, asserting that it was filed without time. It is argued that the minute entry extending the time made on December 5, 1933, was premature and therefore inoperative, since the judgment from which the appeal was taken was entered on December 15 following. This bill of exceptions was settled pursuant to the provisions of section 9390, Revised Codes 1921. We had occasion recently to consider this identi-

cal question in the case of *In re Baxter's Estate*, 94 Mont. 257, 22 Pac. (2d) 182, and, after elaborate discussion, arrived at a conclusion at variance with the contention of counsel. On the authority of that case, the motion is denied.

Many errors are assigned by plaintiffs seeking to review rulings of the court on the admission of testimony over objection, the refusal of offered instructions, the giving of instructions over exceptions, and various other rulings made during the progress of the trial.

It was the theory of the plaintiffs on the trial that the ▮▮ jury could only consider damages accruing to the lands from which the right of way was taken, which were contiguous one to the other. The defendant's theory, on the other hand, was that the jury might consider, and evidence was admissible relating to, the damages accruing to all of the lands owned by it including those held under contract in its possession, and those which were not contiguous to the tract from which the right of way was taken. Defendant contended on the trial and contends in this court that by reason of the "blocking" of the lands and inclosure of many of them within a common fence, the entire holdings, since they were operated as a unit, were the subject of damages recoverable in this action. The trial court, in the main, adopted defendant's theory, and, over the objection of plaintiffs, permitted testimony to be received as to the damage to all of the lands of the defendant, both contiguous and noncontiguous to the tract from which the right of way was taken. It was necessary, in order to reach these outlying lands from the central and only ranch plant, to cross the lands of others, and, as already pointed out, in order to inclose these outlying lands within a common fence, to use the lands of others without any right of way other than that given by a mere license, acquiescence, or failure to protest on the part of the owners.

Subdivision 2 of section 9944, Revised Codes 1921, provides that the commissioners must ascertain and assess, "if the property sought to be appropriated constitutes only a part of a larger parcel, the damages which will accrue to the por-

tion not sought to be condemned, by reason of its severance from the portion sought to be condemned, and the construction of the improvements in the manner proposed by the plaintiff.'' The theory of defendant cannot be upheld, unless it may be said that all of the lands owned by defendant were a part of the larger parcel from which the right of way was taken.

In the case of *State* v. *Hoblitt*, 87 Mont. 403, 288 Pac. 181, 183, it was said: ''Ordinarily damages may be awarded only for injury done to the particular lot or tract of land from which the right of way strip is taken, and the above rule is applied in ascertaining the award to be made by a determination of the value of the acreage taken, and the depreciation in value of the remainder of the particular tract, regardless of what other lands the owner may possess (section 9944, Rev. Codes 1921; *Lewis and Clark County* v. *Nett*, 81 Mont. 261, 263 Pac. 418), but, even where two tracts are separated by a highway or watercourse, or, as here, by a railway, if they are used jointly by the owner in a single enterprise and the whole plant is depreciated in value by the proposed improvement, the direct damages suffered may be compensated (30 C. J. 736).'' When, however, parts of the same establishment are separated by intervening private lands, they are generally considered as independent parcels. (*Kansas City etc. R. R. Co.* v. *Littler*, 70 Kan. 556, 79 Pac. 114; *Leavenworth, N. & S. Ry. Co.* v. *Wilkins*, 45 Kan. 674, 26 Pac. 16; *Cameron* v. *Chicago, M. & St. P. Ry. Co.*, 42 Minn. 75, 43 N. W. 785; *Oakland* v. *Pacific Coast L. Co.*, 171 Cal. 392, 153 Pac. 705, 707; *Sultan W. & P. Co.* v. *Weyerhauser T. Co.*, 31 Wash. 558, 72 Pac. 114; *Chicago Great W. Ry. Co.* v. *Kemper*, 256 Mo. 279, 166 S. W. 291, Ann. Cas. 1915D, 815.)

In the case of *Oakland* v. *Pacific Coast L. Co.*, supra, the California court said: ''It is insisted, however, that a liberal definition should be given to 'parcel,' and that unity of use should be regarded as the controlling and determinative factor in the solution of this question whenever it arises. But if unity of use is the controlling consideration, it can

matter not how far in fact the pieces of land are separated. A factory may be in one county, its warehouse in another, its principal sales agency in a third; any interference with any of the three properties would of necessity be an interference with the unity of use of them all, and, if appellant's position is sound, damages to the other two may be recovered for a taking of or an injury to the third. Indeed, this is but another way of phrasing the real contention of appellant, as quoted above from its brief, that business is property and when the taking by the state or its agencies interferes with, impairs, damages, or destroys a business, compensation may be recovered therefor. We are not to be understood as saying that this should not be the law when we do say that it is not our law.''

Some of the lands for which it was sought to claim damages by the construction of this highway are located more than nine miles from the right of way. The evidence showed that all of the noncontiguous lands were grazing in character and of no greater value than approximately $5 per acre. We appreciate that it is sometimes recognized as an exception to the general rule herein announced that where lands are so inseparably connected in the use to which they are applied that injury to or destruction of one must necessarily and permanently injure the other. (10 R. C. L. 157.) This exception is without application here, as there was no preliminary foundation laid showing that these outlying grazing lands were permanently injured or destroyed. Accordingly, the trial court was in error in admitting testimony as to the damage to the lands which were not contiguous to the tract from which the right of way was taken.

Defendant urges that, primarily, plaintiffs are complaining that the damages are excessive, and that, if the damages are sustained by the evidence, the error in admitting the testimony is harmless. Many of the witnesses testified to the effect that all of the property of the defendant was injured as the result of the taking of this right of way from 20 to 25 per cent. of its value—approximately $1 an acre. Under the

theory of the defendant, as adopted by the trial court, the jury was entitled to consider, in arriving at its verdict, damages on several thousand acres of land which should not have been considered. The damages found were largely as to the injury to the remaining land; and in this state of the record, with an award of damages which, to say the least, is generous, we are unwilling and unable to say that, as a matter of law, the error was harmless. The judgment must be reversed for the error of the trial court in admitting this testimony.

Numerous other errors are assigned, which it will be necessary for us to consider in order to assist the trial court in the retrial of the cause. The defendant offered much evidence with reference to the damage to lands in the valley of Locate Creek, on the theory that by the construction of the highway defendant was permanently deprived of the opportunity of flood irrigating approximately 500 acres of land. It was testified that it had successfully irrigated the already developed meadows by a system of flood irrigation, and that additional acreage could be developed under this plan as hay land. The plan theretofore used, as testified, was to place dams in the various watercourses tributary to Locate Creek coming down the hillside to the south of the creek. These dams were not used to store water, but to cause the flood waters from melting snows in the springtime and summer rains to flood the lands in the valley. The lands to which this testimony related lay in nature's dress. In order to utilize them for the intended use, dams must be constructed, ditches excavated, and the lands cleared of sagebrush and to some extent leveled. All this class of testimony was admitted over objection by plaintiffs, and it is here urged that its admission was error. The vital question thereby raised is whether the defendant was entitled to compensation to pay for their holdings, considered in the light of their especial fitness and value for irrigation purposes in their then existent state. We are unable to improve upon the language of Mr. Justice Field, speaking for the Supreme Court of the United States in the case of *Mississippi & R. River Boom Co.* v. *Patterson,*

98 U. S. 403, 407, 25 L. Ed. 206 on this question: "In deter-mining the value of land appropriated for public purposes, the same considerations are to be regarded as in a sale of property between private parties. The inquiry in such cases must be what is the property worth in the market, viewed not merely with reference to the use to which it is at the time applied, but with reference to the uses to which it is plainly adapted; that is to say, what is it worth from its availability for valuable uses. Property is not to be deemed worthless because the owner allows it to go to waste, or to be regarded as valueless because he is unable to put it to any use. Others may be able to use it, and make it subserve the neces-sities or conveniences of life. Its capability of being made thus available gives it a market value which can be readily estimated. So many and varied are the circumstances to be taken into account in determining the value of property con-demned for public purposes, that it is perhaps impossible to formulate a rule to govern its appraisement in all cases. Exceptional circumstances will modify the most carefully guarded rule; but, as a general thing, we should say that the compensation to the owner is to be estimated by reference to the uses for which the property is suitable, having regard to the existing business or wants of the community, or such as may be reasonably expected in the immediate future."

However, the foregoing statement is subject to the distinc-tion which we think is well drawn in the Missouri case of *St. Louis, M. & S. E. R. Co.* v. *Aubuchon,* supra, wherein the court said: "If the use contended for be merely an intended use resting in the whims or hopes or plans of the owner, and is not a use springing from the special adaptation of the prop-erty and recognized as of present marketable value, then the mere fact that the property might be susceptible to such future use is too unsubstantial and problematical to be an element in estimating damages."

If these lands now being considered have the additional market value over the other grazing lands by reason of their susceptibility to irrigation in their present state, the defend-

ant is entitled to recover the difference between that value and the value of the other grazing lands, if their utility for that purpose is destroyed by the construction of the highway as is indicated by the testimony in this record. The trial court was not in error in admitting this testimony.

Evidence was received on behalf of defendant, over objection of plaintiffs, that it would be necessary to fence the highway, and that, after fencing, with the ends of the lane open, range cattle would stray on the highway, and that these cattle upon smelling the water, presumably in Locate Creek, and being alarmed by motorcars upon the -highway, would break through the fences and thereby make it necessary for defendant, in the winter-time in particular and during other seasons, to employ additional help to repair the fences and remove trespassing live stock. Recoverable damages in this type of cases, as in all cases of this kind, must be the natural and proximate consequence of the action taken. They must be actual, direct and certain, actionable and reasonable. They must be readily ascertainable and not remote, speculative or contingent. (*Lewis and Clark County* v. *Nett,* 81 Mont. 261, 263 Pac. 418; *State* v. *Hoblitt,* supra.) Evidence of the class of damages under consideration is too remote, speculative and conjectural to be received, and should be excluded.

Plaintiffs offered certain instructions which were refused by the trial court, wherein the jury was told they might take into consideration what are ordinarily termed neighborhood or community benefits resulting from the construction of the highway. The tenor of these instructions is contrary to the ruling by this court in the case of *Gallatin Electric Ry.* v. *Neible,* 57 Mont. 27, 186 Pac. 689, wherein, after elaborate discussion, we held that this class of benefits may not be considered by the jury, and we are not disposed to depart from the rule there announced. The court did not err in refusing these instructions.

It appears from the record that early in the trial, before but little of the evidence had been received, the jury was, under order of the court, permitted to view the premises.

This ruling is assigned as error. The viewing of the premises in a case of this character is in the sound discretion of the trial court. (Sec. 9350, Rev. Codes 1921.) We are not prepared to say that in every case permission to view the premises prior to the reception of testimony is error or an abuse of the court's sound discretion. However, it is a dangerous practice, as the trial court must of necessity direct persons in charge of the jury, or those permitted to accompany the jurors, to point out the particular portions of the premises affected or claimed to be damaged. Hence, if particular portions of the premises are directed to the jury's attention, and subsequently evidence with reference to the alleged damage as to these portions is rejected, error is likely to ensue. The purpose of the viewing of premises is not under our statutory law the taking of testimony, but to enable the jury better to understand the evidence received on the trial of the case. (*State* v. *Anderson,* 92 Mont. 313, 13 Pac. (2d) 228; *State* v. *Cates,* 97 Mont. 173, 33 Pac. (2d) 578.) The better practice is for the jury to view the premises after the case has sufficiently progressed to the point where it is known what are the various items of damages to be considered in the light of the trial court's rulings on the admission and rejection of offered testimony. In the absence of the observance of this rule, the danger of the attention of the jury being invited to portions of the premises not properly before it for consideration is ever present.

The plaintiffs offered their proposed instruction No. 4, ▮ which was refused, and error is assigned to this ruling. The instruction reads: "Evidence has been introduced concerning uses to which the land belonging to the defendant was not put on June 2, 1933, but for which the evidence tends to disclose it may be available. Such evidence is but sales talk, persuasive only insofar as it would convince a prospective purchaser that the price asked is reasonable under all of the circumstances shown. The jury stands in the position of the purchaser. For this reason the test is: What is the market value of the land condemned for any commercial use

of its own in the immediate present or reasonable anticipation in the near future?' You may not consider the probable future value of the property. Your consideration of the evidence must be limited to uses to which it has or may be adapted in the near future, and not extending to speculative inquiries to possible future uses under altered conditions.'' This instruction is substantially a verbatim copy of certain passages from the opinion of this court in the case of *State* v. *Hoblitt*, supra. The second sentence of this instruction, although the language of this court, is obviously a comment on the evidence, which renders the instruction improper. (*Hardesty* v. *Largey Lumber Co.*, 34 Mont. 151, 86 Pac. 29.) If the objectionable sentence were removed from the instruction, we think it would be proper. Counsel should bear in mind that it is not proper to embody every utterance of this court in an instruction in future cases, especially where the statements are comments upon the weight of the evidence or its sufficiency in any given case.

The court gave the following instruction: ''You are instructed that the term 'owner' to whom compensation must be paid, may include a purchaser under contract who has an interest in the land sought to be taken or damaged.'' Plaintiffs urge error to the giving of this instruction. The instruction is entirely proper. (*Wolfe* v. *Iowa R. & L. Co.*, 178 Iowa, 1, 155 N. W. 324; *Pinkerton* v. *Boston, A. & R. Co.*, 109 Mass. 527; *Stevenson* v. *Loehr*, 57 Ill. 509, 11 Am. Rep. 36.) Defendant, under a contract of purchase and sale, is still obligated to pay the purchase price, and if the lands described in the contract are damaged—that is, by the taking —that in nowise relieves it of its obligation to complete its contract.

Lastly, it is urged that the trial court was in error in awarding costs on the trial of this case against the plaintiffs. They urge in support of this contention the provisions of Chapter 145, Laws 1927, wherein it is provided: ''In case the party appealing from the award of the commissioners in any proceeding, as aforesaid, shall not succeed

in changing to his advantage the amount of damages finally awarded in such proceeding, he shall not recover the costs of such appeal, but all the costs of the appellee upon such appeal shall be taxed against and recovered from the appellant." However, this section, as it originally stood before its amendment, only applied to appeals on behalf of the defendant. In 1927 it was amended to allow an appeal on behalf of the plaintiff as well. The title of the Act declares that section 9947, Revised Codes of 1921, is to be amended so as to allow an appeal by either party in condemnation proceedings. No mention is made of any change with reference to costs. Section 9953, Id., provides that the allowance of costs is in the discretion of the court.

The title of an Act may be resorted to in order to determine the legislative intention. (*Nangle* v. *Northern Pac. Ry. Co.*, 96 Mont. 512, 32 Pac. (2d) 11.) In view of the fact that the provision with reference to costs was in the old Act prior to the enactment of Chapter 145, Laws 1927, no mention being made in the title of the subject of costs, and no attempt made to repeal or amend section 9953, unless by implication, we think that the quoted provisions of the chapter have application only to appeals by the defendant, and that the matter of the allowance of costs is in the sound discretion of the trial court in cases of this nature, where plaintiff appeals from the award of the commissioners. Since the amount of damages awarded on the jury trial was substantially the same as that awarded by the commissioners, we think the court did not abuse its discretion in awarding costs.

The judgment is reversed and the cause remanded to the district court of Custer county with directions to grant the plaintiffs a new trial and to proceed to a determination of the damages and compensation due the defendant, and that on the filing of the remittitur from this court the parties hereto may each file their respective memoranda of costs and disbursements; and the trial court is directed to determine the correctness of the costs of each of the parties in accordance with the statutory law of this state, but that the

matter of awarding these costs shall be determined by the trial court in the exercise of its sound discretion after the further trial of this cause.

MR. CHIEF JUSTICE SANDS and ASSOCIATE JUSTICES MATTHEWS, STEWART and MORRIS concur.